# Dever v. Pennsylvania Railroad Co., Appellant.

*Negligence—Railways—Shifting of cars—Evidence—Case for jury.*

A verdict and judgment for plaintiff against a railroad company will be sustained, where the evidence for the plaintiff tends to show that the plaintiff, who was in the employ of another person than the defendant, was engaged at night in pushing a freight car upon a pier of a storage company; that while so doing he was struck by another car which had been backed on the pier; that it was the custom of the defendant company when cars were being backed on the pier to send a brakeman ahead, and to display a light from a lantern when a car was moved at night; that at the time of the accident this custom had not been observed; and that the locomotive and car which caused the injury were operated by the defendant company, and not by another company which also used the pier.

Where a plaintiff in an accident case avers in his statement of claim that the injury was caused in a particular manner, he must prove this averment at the trial. Such proof may be by direct or circumstantial evidence, but when the latter evidence is relied on the inference therefrom must be such as will reasonably exclude all other theories but that the accident occurred from the cause set up in the statement.

Argued Dec. 14, 1916. Appeal, No. 68, Oct. T., 1916, by defendant, from judgment of C. P. No. 4, Philadelphia Co., Dec. T., 1912, No. 3868, on verdict for plaintiff in case of Thomas J. Dever v. The Pennsylvania Railroad Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before AUDENRIED, P. J.

At the trial it appeared that the plaintiff was employed by one James Gracey, as a stevedore, in loading and unloading cars upon piers of the Girard Point Storage Company, and that he was injured while in such employment by defendant's servants. Both the defendant

516    DEVER *v.* PENNA. R. R. CO., Appellant.

and the storage company moved cars on the pier. The circumstances of the accident are detailed in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,140. Defendant appealed.

*Error assigned* was in refusing motion for judgment for defendant n. o. v.

*Sharswood Brinton,* for appellant.—There was no evidence to connect defendant with the injuries referred to in the statement of claim: Philadelphia & Reading R. R. Co. v. Heil, 5 W. N. C. 91; Frazier v. Lloyd, 23 W. N. C. 178; Spees v. Boggs, 198 Pa. 112; Huey v. Gahlenbeck, 121 Pa. 238; Shvagzdys v. Pittsburgh & Lake Erie R. R. Co., 48 Pittsburgh L. J. N. S. 136; Ginn v. Penna. R. R. Co., 220 Pa. 552.

*John Martin Doyle,* with him *Eugene Raymond,* for appellees.—For illustrations of the general doctrine that absolute and detailed proof of the identity of the defendant as the party guilty of negligence is not always required reference may be made to the following cases: Hunt v. Philadelphia and Reading Ry. Co., 224 Pa. 604; Knickerbocker Ice Co. v. Penna. R. R. Co., 253 Pa. 54; Corpies v. Sand Co., 31 Pa. Superior Ct. 107.

OPINION BY KEPHART, J., March 16, 1917:

Plaintiff was employed upon the piers of the Girard Point Storage Company, which are at least two in number, and upon which there are tracks used for loading and unloading cars into or from barges alongside of the piers. Defendant shifted cars upon these piers on the night the injury was supposed to have taken place. They were loaded by the employees of the storage company. Plaintiff's duties, beside loading and unloading cars, were to bar cars, that is, to move them from where the railroad left them to the place where they were to be

loaded. The evidence showed that on the night in question he had been thus employed, as well as in the duty of loading cars. It also established a custom, practiced by the crews, when in the act of shifting trains or cars backed upon the pier, of sending a brakeman ahead of the train giving notice of its approach, and carrying a lantern for that purpose when the movement took place at night. The plaintiff was struck by a car being backed on the pier, and squeezed between the car and a mooring post, which stood along the extremity of the pier. His testimony shows that no warning was given of an approaching car, and the noise about the piers from other causes prevented him from hearing the rumble of a car as it drew near him. The defendant, at this particular time, did not observe the custom of sending a man ahead to give warning and the plaintiff could not see the movement of the car on account of the darkness. He received the injury when he was in the act of picking up a bar to propel a car. The defendant contends that the plaintiff's evidence failed to show that he was struck by a car propelled by the defendant's servants, and if that be so there was no evidence of defendant's negligence. It was incumbent on the plaintiff to establish this negligence and when a cause for injury is laid in the pleadings, the plaintiff is obliged to prove that the injury occurred in the manner asserted. Such proof may be by direct or circumstantial evidence, but when the latter evidence is relied on, the inference therefrom must be such as will reasonably exclude all other theories but that the accident occurred from the cause set up in the statement. This rule has been frequently applied by the Supreme Court in negligence cases.

The plaintiff, in his narrative of the work done by the defendant, and in detailing the manner in which trains were moved and cars were shifted and placed—and his statement was found by the jury to be the correct one— continues in that connection as follows: "Q. What was the first knowledge you had that a car was at all near

you just before you were hurt?    Did you have any?    A.
No, sir.    Not until I was struck.    I didn't see no car
until I was struck.    Q. Was that the first you knew when
it crushed you?    A. Yes, sir.    Q. Explain how it crushed
you.    A. I stooped down to pick up a bar, and this train
caught me.    Q. Which part of the car caught you?    A.
The end of the car.......Q. What did it push you
against?    A. A mooring post.    (Plaintiff then described
the mooring post.)    Q. What is the custom down there,
what had always been the custom when they were back-
ing those cars in?    A. When they backed in a train they
generally blowed the whistle at least three or four times
and a man walked down the track with a light, waving
a light and hallooing to get out of the way.    Q. Was
there any whistle blown that night by that train?    A.
No, sir.    Q. Was there any man came down with a light?
A. No.    Q. Was there any light on any part of the train
that you could see?    A. Not that I could see.    (It is
admitted that the defendant was the owner and in pos-
session and use of the locomotive, and the crew of the
train were its employees and on their payroll.)    Q. On
the other occasion you said they had a man there at night
with a light.    Who did he work for?    A. The Pennsyl-
vania Railroad."    And later on in his testimony: "Q.
You told Mr. Brinton that at the moment when you were
struck you were looking for the bar, walking between
the track and the post.    That was outside of the track,
was it not?    A. Yes, sir.    Q. Mr. Brinton asked you
whether on the night that you were hurt, and at the time
you were hurt, they were moving these cars in and out
and doing this work exactly as they always did it before.
Did you understand that question?    A. No; I did not
understand it.    Q. Now you understand what his ques-
tion was?    A. Yes, sir, I understand it now.    Q. Were
they doing everything exactly as they always did before?
A. No, they were not.    Q. What did they omit to do?
What was it they did not do?    A. There was no light on

the end of the train, or there was no brakeman on the end of the train."

While the evidence is not direct that at this particular time the defendant's train was moved down and one of its cars struck the plaintiff, taking into consideration all of the evidence given by the plaintiff, his narration of all the events that occurred, and the description of the accident, we feel that the court below could not, as a matter of law, have taken this case from the jury because the defendant failed to establish by direct evidence the fact that a car moved by the defendant's motive power struck the plaintiff. The jury was warranted in finding from all this evidence that he had been so injured. The defendant denies inferentially that it committed the trespass complained of, and bases its denial on the plaintiff's evidence that the accident took place at nine o'clock. At this time the defendant was engaged in another part of the yard. This presented a clear contradiction in the evidence, which the jury alone could determine. The weight of the evidence seemed to be with the defendant, but the court carefully instructed the jury as to the plaintiff's interest and the probabilities of the defendant causing the injury complained of. The facts present one of those cases of which the jury must be the sole judges.

The judgment is affirmed.