## Earll v. Wichser

*Webster S. Achey,* for plaintiff.

*Howard I. James, J. Leslie Kilcoyne,* and *John P. Betz,* for defendant.

BOYER, J., April 6, 1942.—This is an action of trespass brought by plaintiff against defendant to recover damages suffered by plaintiff in a fall from defendant's truck alleged to have been caused by the negligent operation of the truck by defendant. Upon trial the jury returned a verdict in favor of plaintiff in the sum of $18,101; whereupon defendant filed these motions for judgment n.o.v. and for a new trial, respectively. The reasons filed in support of the motion for a new trial, in addition to assigning the reasons urged in support of the motion for judgment n. o. v., raised the questions of "joint enterprise" and "excessive verdict". At argument these reasons were abandoned and the motion for a new trial was not pressed, counsel for defendant relying entirely upon the motion for judgment n. o. v. The motion for a new trial will, therefore, be dismissed without further discussion.

The motion for judgment n. o. v. raises two distinct questions for the court to determine, namely: whether the evidence was sufficient to sustain a finding of negligence on the part of defendant; and second, whether the court should declare plaintiff guilty of contributory negligence as a matter of law.

The consideration of the motion for judgment n. o. v. requires a review of the facts which the jury might reasonably have found, taking plaintiff's evidence as true and considering it in a light most favorable to him: McFadden v. Pennzoil Co., 341 Pa. 433, 435; Frank v. Reading Co., 297 Pa. 233, 236; Vendig v. Union League of Philadelphia, 291 Pa. 536. Plaintiff and defendant, both residing in the Borough of Bristol, Bucks County, were members of the entertainment committee of an Elks Lodge in that borough, and as such made preparation for, and conducted a lodge picnic on a farm about five miles from the lodge home on September 17, 1939. Defendant had used his truck for the purpose of hauling trestles, tables, boilers, food,

and other articles to the picnic grounds that morning. Plaintiff had gone to the grounds in another car, but remained in the evening to assist in clearing up and loading the truck after the picnic was over for the purpose of returning the articles to the Elks Home. Defendant was driving his own truck and had with him two other members besides plaintiff to assist. As plaintiff had no other means of conveyance, defendant invited him to ride home on the truck with them. Since there was room in the cab of the truck for only three persons, plaintiff rode on the rear of the truck. One of the three men who rode in the cab had courteously offered his seat in the cab to plaintiff, who, because he was not one of the original party, declined the invitation and insisted on riding in the body of the truck himself. This arrangement was finally made. The truck was an open metal-body Chevrolet half-ton truck with a closed cab. The body had tall vertical sides with the upper fourth sloping outward. There was no space or opening between the vertical portions of the sides of the body and the sloping portions. This is material to indicate whether there was a reasonable opportunity for plaintiff to have taken a grip or hold on the side if he had been seated in the body proper. The body also had a tailboard attached with hinges, dropped level with the floor of the truck and supported there by chains fastened to the sides of the body. Plaintiff seated himself on this tailboard, holding on to the supporting chain with one hand and to the rear edge of the tailboard with the other and with his feet hanging over the edge. The truck had been loaded with the picnic equipment by placing the tables or table tops upright on their edges, leaning against one side of the truck, without being tied or fastened. The trestles, metal tubs, and other containers were placed loosely in the front end of the body leaving ample room behind them and beside the table tops in which plaintiff might have sat, if other conditions were favorable, without his being required to sit on the tailboard. Defendant

saw plaintiff sitting in this position on the tailboard and knew he was there before starting on the homeward journey. He made no criticism of the position which plaintiff had taken on the tailboard; but remarked to plaintiff before they started, "This is not a Packard. This is going to be rough riding." Thus seated, the party proceeded toward Bristol, approximately a mile of the journey being over slightly improved, but very rough road. Defendant drove at the rate of 40 miles per hour, jolting plaintiff so severely that he called out to defendant asking him to drive more slowly, which calls, by reason of the noise created by the truck and the rattling of the loose articles in the body, were apparently not heard by defendant. Defendant's vision in his mirror was obstructed so that he could not see plaintiff, but one of the other occupants of the cab reported at least once that plaintiff was all right. Immediately after their entrance into the borough, the road led over an arched, concrete canal bridge, the roadbed being constructed of comparatively smooth macadam. On defendant's side of the roadway as he approached the crest of the bridge was a manhole, the covering of which projected approximately an inch and a half to three inches above the level of the roadbed. At this point, also, there was an ascending grade of approximately one foot to thirty feet, also described as a seven percent grade. Defendant drove up this approach to and over the crest of the bridge at the same rate of 40 miles per hour. In the immediate neighborhood of the manhole plaintiff, seated on the tailboard of the truck, received such a severe "jolt" as to throw him from the truck. He described it in these words, ". . . I remember feeling this jolt on the bridge and then the next thing I remember I was flying out in the air with one hand holding on to the chain and that is the last I remember . . ." The men in the cab did not know that plaintiff had been thrown off and drove on for two or three blocks before they discovered that he

was missing. As defendant drove over the bridge and crossed a series of railroad tracks a short distance beyond, his truck, with its load, made extremely loud noises so as to attract attention and while driving across the tracks the jolting threw an empty tub from the truck which the driver also failed to notice. Plaintiff in his fall suffered a fracture of the skull and serious injury to the brain tissue which will result in permanent and increasing physical and mental disability through life.

The first question which these facts present is, whether the jury's finding that defendant caused plaintiff's fall by his negligent operation of the truck is sustained by the evidence. Defendant contends that, before the jury could find for plaintiff, he must show, by direct evidence, that defendant drove his truck over the manhole cover, thereby throwing plaintiff from the truck, and that there is no such evidence in this case. If that were essential to the sustaining of the verdict, there might be merit in this claim. If this plaintiff were suing the municipality for causing his injuries through failure to maintain the manhole in proper condition, then he would be required to prove by direct or strong circumstantial evidence that the truck actually hit the manhole. In that event such evidence would be indispensable or jurisdictional; but we are convinced that in this case there is sufficient evidence to sustain the jury's finding without proof that the manhole was the cause of the jolt and accident. While it is true that the statement of claim avers as one of the elements of negligence that the truck struck the manhole, that is not the only element of negligence averred in plaintiff's statement and shown by the evidence.

In our opinion there is evidence from which the jury might have found that defendant drove this truck over the bridge at a rate of speed which, under all the circumstances, was highly excessive and dangerous. These circumstances which had bearing on the question of

negligent speed were: First, the type of vehicle; second, the type of load carried in the body of the truck; third, the known position of plaintiff on the tailboard of the truck; and fourth, driving up grade, so that the tailboard would slant downward.

The vehicle was not a passenger conveyance, especially that portion in which plaintiff was compelled to ride. Defendant himself was conscious of this fact when he told plaintiff, "this is not a Packard. This is going to be rough riding." In the second place, plaintiff's position was made more precarious by reason of the manner in which the truck was loaded with a large number of loose articles, including unsecured table tops which might easily have fallen over on the passenger in the rear. Third, and most important, was defendant's knowledge that plaintiff was seated on the tailboard of the truck, which, with careful driving at moderate speeds, was safe enough, but which, at a high and unreasonable rate of speed, would become a precarious position in which to ride. Defendant, in the observation of due care and consideration for the safety of his passenger, should have kept this in mind continuously and driven his truck accordingly. And fourth, defendant should have considered that driving up-grade at a high rate of speed was dangerous to plaintiff by causing a tendency to slide off the sloping tailboard.

In our opinion the question whether defendant failed to operate his truck with due care and whether that produced the accident as a proximate cause was properly submitted to the jury. They could find such want of care independently of the question as to whether the wheels of the truck struck the manhole or not. It is apparent as a matter of simple deduction from physical laws that the wheels of the truck struck something which caused the jolt, whether it was the manhole or some unevenness in the surface of the road or some other object. Whatever it struck, it must have been the high rate of speed that produced the severity of the

jolt. There are other circumstances which may have led the jury to conclude that this defendant was negligent or even reckless in the manner in which he operated his truck. There is the statement made by defendant as they left the picnic grounds that, "this is not a Packard. It is going to be a rough ride," possibly made in a jocular mood. The jury may have found that this was a hilarious post-picnic party and that plaintiff was literally going to prove that it was "going to be a rough ride". This would be borne out by the apparently senseless manner in which they drove over an admittedly rough road, the extreme noise made by the truck and its load, and the losing of a passenger and a metal tub en route without the occupants of the cab ever noticing it. In other words, the jury may have found that they literally took plaintiff for a wild ride with the tragic consequences resulting in this suit. The fact that it may have been done in fun and as a practical joke on plaintiff would not take it out of the category of negligence or recklessness.

Plaintiff and one or two other witnesses gave direct testimony as to the high rate of speed. Therefore, there was direct and positive evidence as to this element of negligence. There was also what may have been circumstantial evidence as to the truck striking the manhole. This evidence consisted of the testimony as to the location of the manhole with relation to the point, or vicinity, where plaintiff was thrown from the truck combined with evidence that the roadbed, with the exception of the manhole, was comparatively smooth. While the description of the roadbed in the immediate vicinity of the manhole was not as definite as might be desired, the jury might have concluded that there was nothing that could possibly have caused such a severe jolt in that immediate vicinity excepting the manhole cover, so that, even if proof were required that defendant negligently struck the manhole cover at a high rate of speed, there is circumstantial evidence from which a jury might reasonably have reached that conclusion.

Negligence may be established by circumstantial evidence and the reasonable inferences to be drawn therefrom; and the proximate cause of an injury may be established by circumstantial evidence: Taylor v. General Accident Assurance Corp., Ltd., 208 Pa. 439, 441; Sgier et al. v. Philadelphia & Reading Railway Co., 260 Pa. 343; Zeher v. Pittsburgh, 279 Pa. 168; Dever v. Pennsylvania Railroad Co., 66 Pa. Superior Ct. 515.

In the last cited case the head-note reads: "Where a plaintiff in an accident case avers in his statement of claim that the injury was caused in a particular manner, he must prove this averment at the trial. Such proof may be by direct or circumstantial evidence, but when the latter evidence is relied on the inference therefrom must be such as will reasonably exclude all other theories but that the accident occurred from the cause set up in the statement." See also Ranck et al v. Sauder et al., 327 Pa. 177, Wenhold v. O'Dea, 338 Pa. 33, and Frazier et ux. v. City of Pittsburgh et al., 142 Pa. Superior Ct. 88.

The theory on which the jury could find that the striking of the manhole cover caused the accident would be that the jolt was of an exceptionally severe nature and that there was no other object except the manhole in the roadbed in that vicinity which could possibly have caused such a jolt. The only doubt in the court's mind as to the jury's ability to find such a fact is the meagerness of the evidence describing the nature of the roadbed in that vicinity. If defendant did strike a manhole projecting as high as three inches above the surface of the roadbed at the rate of speed of which he is accused, the jury could well find that he drove negligently and thereby caused the accident. In this connection we have carefully considered the cases cited by defense counsel in which it was held that the evidence was not sufficient to sustain a conclusion that the striking of a particular object or the stepping into

a specified hole or depression was not sufficiently proved. However, in all those cases cited the entire case was based on the proof that such obstacle or defect alone caused the accident. We do not consider those cases as being strictly parallel or controlling in this case.

The question as to whether the evidence shows plaintiff to have been guilty of contributory negligence as a matter of law is not free from difficulty. At first blush it might appear that for a man to ride on the tailboard of an open truck where there is room to sit in the body of the truck would be negligence per se. However, in this case there are two important circumstances which give a different aspect to the question. The first is the manner in which the truck was constructed and loaded. There was no seat or object on which plaintiff could sit with reasonable comfort and, perhaps, safety. It would seem rather apparent from the evidence and the photographs of the truck that he would have had nothing to hold on to and by which to support himself had he seated himself on the floor of the body of the truck. The top of the side of the body on his left sloped outward so that he would not have a reasonable opportunity to hold and support himself on that side. There was no slit or opening between the vertical and sloping portion of the side to give a hand hold. On the other side were the loose table tops at which it is evident that he could not hold himself because they were not firm or fastened to anything. A slight tug would tend to pull the tables down upon him. On the other hand, as he was seated on the tailboard he appeared to have a reasonably good hold with which to support himself under ordinary circumstances. He held on to a stout, firmly-fastened chain with one hand and to the edge of the tailboard with his other hand. In addition to that his position was fairly comfortable as it allowed him to sit with his feet hanging over the edge of the board or seat.

Perhaps the most important circumstance affecting this question is plaintiff's own explanation as to why he sat on the tailboard, as he put it: "Well, that was the only logical place I could sit and hold on to something." His reason, as he gave it, indicated that he gave thought and attention to the matter of safety in selecting his seat and had decided that the position in which he actually rode was the safest. If he did, that would be evidence of care on his part, even though subsequent events might prove him to have been mistaken in his judgment. If, in his opinion, as he knew the facts and circumstances at the time, that appeared to be the safest position because it was the only one in which he could "hold on to something", the court cannot now, in the light of its knowledge of what subsequently transpired, substitute its judgment for that of plaintiff.

The rule laid down by our appellate courts that the trial court may declare a plaintiff to have been guilty of contributory negligence as a matter of law if "reasonable individuals could not disagree as to its existence" (Altomari v. Kruger et al. 325 Pa. 235, at 240; Christ v. Hill Metal & Roofing Co., 314 Pa. 375), is not of much assistance in this case. We are led to inquire how the court can say that "reasonable individuals could not disagree" as to this plaintiff's alleged contributory negligence. In fact, this question was submitted to 12 presumably "reasonable individuals" who, after a review of the facts by the court on this branch of the case and full instruction as to the law, unanimously declared by their verdict that plaintiff was not negligent in assuming his position on the tailboard of the truck. The statement of the court in Christ v. Hill Metal & Roofing Co., supra, appears to be apropos when it said (p. 380):

"We agree that there was evidence from which *the jury could* have concluded that plaintiff was negligent, but we do not agree that this conclusion is so irresistible that fair and sensible men could not differ as to it . . ."

There is another angle from which the question of plaintiff's negligence can be viewed: Defendant admittedly had seen and knew of plaintiff's position on the tailboard before he started to drive. The jury could reasonably have found that plaintiff knew that defendant was cognizant of his position and its dangers, if any, defendant being the owner of the truck and even more familiar with its construction than plaintiff. He, therefore, had a right to assume that defendant would drive carefully and at a rate of speed that would be safe and reasonable in view of plaintiff's position. In all probability the jury gave a great deal of importance and weight to the fact that before starting there had been comment among these men as to plaintiff's position in the truck and that it would not be comfortable riding as in the cab, so that plaintiff had every reason to believe that defendant would drive with, at least, ordinary care. The language of the court in McFadden v. Pennzoil Co., 341 Pa. 433, 438, seems to be in point, to wit:

"Apt, therefore, is the following, from Wagner v. P. R. T. Co., 252 Pa. 354, 359-60: 'The failure to anticipate negligence which results in an injury is not negligence and will not defeat an action for the injury sustained. A party is not bound to guard against the want of ordinary care on the part of another; he has a right to presume that ordinary care will be used to protect him and his property from injury. No one can complain of want of care in another where care is only rendered necessary by *his own wrongful act.*' [Italics supplied.] See also Lewis v. Wood, 247 Pa. 545, 549; Handfinger v. Barnwell Bros., Inc., 325 Pa. 319, 323."

There is another principle of law which we believe is applicable in this case, namely, that stated in McFadden v. Pennzoil Co., supra, as follows (p. 436):

"But, in order to defeat recovery of damages for injuries arising from the negligence of another, the injured person's negligence must have been a juridical

cause of the injury, and not simply a condition of its occurrence: Passenger Ry. Co. v. Boudrou, 92 Pa. 475, 479; Weir v. Haverford Elec. Light Co., 221 Pa. 611, 617; Williams v. Metropolitan Edison Co., 267 Pa. 158, 162; Hull v. Bowers, 273 Pa. 429, 433. 'The fact that the plaintiff has failed to exercise reasonable care for his own safety does not bar recovery unless the plaintiff's harm results from a hazard because of which his conduct was negligent': Restatement of Torts, section 468."

Thus in this case it may well be argued that plaintiff's position on the tailboard of the truck did not in itself cause the accident, but was simply a condition of its occurrence, the real cause of the accident being the high rate of speed and the severe jolt resulting therefrom.

Certainly, plaintiff's politeness in insisting upon the other men taking the more comfortable and safer seats within the cab was not a juridical cause of the injury as contended by defendant. It was merely a remote condition explaining the reason for plaintiff's position on the truck.

We conclude that the court properly submitted both the question of defendant's negligence and plaintiff's contributory negligence to the jury under instructions as to which there is no complaint and that the parties are bound by the conclusions of the jury as represented by their verdict.

Now, April 6, 1942, the motion for a new trial is overruled and a new trial refused.

Now, April 6, 1942, the motion for judgment non obstante veredicto is overruled and rule discharged.