# Weir *v.* Haverford Electric Light Company, Appellant.

*Negligence—Electric light company—Degree of care—Contributory negligence—Comparative negligence.*

While companies furnishing electricity are held to the very highest degree of care practicable to avoid injury to persons who may be lawfully in proximity to their wires, such persons are not relieved from the consequences of their own neglect, nor are the companies liable for accidents that were not in reason to be foreseen and guarded against.

In an action against an electric light company to recover damages for the death of plaintiff's husband, no recovery can be had where the evidence shows that the deceased, a house painter, went upon a roof to paint, that he was twice warned of danger from contact with the electric wires, but notwithstanding the warning he placed his hand in such a position that it came in contact with a wire where the rubber covering was only off to the extent of an inch, and the wire itself was at this point securely fastened seven feet above any place from which it could be ordinarily reached.

The doctrine of comparative negligence has no recognition in Pennsylvania. Any negligence on the part of plaintiff that contributes to and is the proximate cause of his injury defeats his action. There can be no balancing or matching of degrees of negligence.

In an action against an electric light company to recover damages for death of plaintiff's husband caused by contact with an exposed wire, where there is no evidence that the defendant maintained a common nuisance, or was guilty of wanton negligence, it is error for the trial judge in his charge to refer to the negligence of the deceased as being "light" negligence, and that of the defendant as being "heavy" negligence.

Argued Jan. 20, 1908. Appeal, No. 214, Jan. T., 1907, by defendant, from judgment of C. P. No. 2, Phila. Co., Dec. T., 1902, No. 3,265, on verdict for plaintiff in case of Lizzie C. Weir v. Haverford Electric Light Company. Before MITCH-ELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEW-ART, JJ. Reversed.

Trespass to recover damages for death of plaintiff's husband. Before SULZBERGER, J.

The facts are stated in the opinion of the Supreme Court.

Verdict for plaintiff for $12,000, upon which judgment was entered for $8,500, all above that amount having been re-mitted. Defendant appealed.

*Errors assigned* were (1) in refusing binding instructions for defendant, and (5) in charging as follows:

" To sum up, if the two were both guilty, the decedent and defendant, if they were both guilty of ordinary negligence, there can be no recovery in this case. If they were both guilty of grave and wanton negligence, there can be no re-covery in this case. If the defendant was guilty of wanton negligence, of maintaining a nuisance, and the decedent was merely guilty of ordinary inadvertence, then the plaintiff can recover. So that in the two cases of either heavy negligence or light negligence, if they were both equally guilty that is the end of it. It is only when there is an inequality that the plaintiff can recover. If the decedent was guilty of mere in-advertence, and the defendant was guilty of much more than mere inadvertence, to wit: of maintaining a nuisance danger-ous to the lives of citizens criminally negligent, in that case the plaintiff can recover, and also the plaintiff can recover if the decedent was not guilty of any negligence whatever, and the defendant was guilty of negligence leading to the injury."

*Charles Biddle*, of *Biddle, Paul, Miller & Jayne*, for ap-pellant.—The plaintiff cannot recover in this case if her hus-band was guilty of contributory negligence, and it is imma-terial what was the degree of such negligence : Pass. Ry. Co. v. Bresner, 97 Pa. 103 ; Pittsburg Southern Ry. Co. v. Taylor, 104 Pa. 306 ; Kibele v. Phila., 105 Pa. 41 ; McDonald v. Iron

& Coal Co., 135 Pa. 1 ; Winner v. Oakland Twp., 158 Pa. 405 ; Kaufhold v. Arnold, 163 Pa. 269 ; McEwen v. Hoopes, 175 Pa. 237 ; Nuss v. Rafsnyder, 178 Pa. 397 ; Wood v. Electric Co., 185 Pa. 529 ; Boyle v. Boro. of Mahanoy City, 187 Pa. 1 ; Mitchell v. Stewart, 187 Pa. 217 ; Artz v. Lit, 198 Pa. 519 ; Hart v. Allegheny County Light Co., 201 Pa. 234 ; Jennings v. Union Traction Co., 206 Pa. 31 ; Simmons v. Traction Co., 207 Pa. 589 ; McIntire v. Steel Foundry, 208 Pa. 34 ; Durst v. Bromley Bros. Carpet Co., 208 Pa. 573 ; Alexander v. Light Co., 209 Pa. 571 ; McNeil v. Clairton Steel Co., 213 Pa. 331 ; Zeilmann v. McCullough, 214 Pa. 27 ; Hoffman v. Transit Co., 214 Pa. 87 ; Danisch v. Amer, 214 Pa. 105 ; Slota v. Lumber & Mfg. Co., 215 Pa. 434 ; Hotchkin v. Erdrich, 214 Pa. 460 ; R. R. Co. v. Norton, 24 Pa. 645 ; Thomas v. Ry. Co., 132 Pa. 504 ; Mattimore v. Erie, 144 Pa. 14 ; Del., L. & W. R. R. Co. v. Cadow, 120 Pa. 559.

There is nowhere to be found in the Pennsylvania decisions upon questions of the civil responsibility for negligence any authority for " matching " the degrees of negligence of which the plaintiff and the defendant may have been guilty. Nor is there to be found any such nomenclature, as " heavy negligence " and " light negligence : " Lynch v. Troxell, 207 Pa. 162 ; Phila. Traction Co. v. Orbann, 119 Pa. 37.

The jury ought not to have been instructed that it was any part of their duty to ascertain whether the defendant was guilty of maintaining a common nuisance : Lancaster Turnpike Co. v. Rogers, 2 Pa. 114 ; Com. v. Yost, 197 Pa. 171.

*A. S. L. Shields*, with him *Sandberg & Heymann*, for appellee.—The case was for the jury : Patterson v. Ry. Co., 210 Pa. 47 ; Unger v. R. R. Co., 217 Pa. 106 ; Schum v. R. R. Co., 107 Pa. 8 ; Alexander v. Nanticoke Light Co., 209 Pa. 571 ; Wood v. Diamond Electric Co., 185 Pa. 529 ; Fitzgerald v. Electric Illuminating Co., 200 Pa. 540.

The principle that contributory negligence is no defense where the defendant's negligence is so wanton or reckless as to be the legal equivalent of willful or intentional wrong, is well established in other jurisdictions : Georgia Pacific Ry. Co. v. Lee, 92 Ala. 262 (9 So. Repr. 230) ; Louisville & Nashville Ry. Co. v. Crawford, 89 Ala. 240 (8 So. Repr.

243); Hector Mining Co. v. Robertson, 22 Colo. 491 (45 Pac. Repr. 406); Florida Southern Ry. v. Hirst, 30 Fla. 1 (11 So. Repr. 506); Denman v. Johnston, 85 Mich. 387 (48 N. W. Repr. 565); Wabash Railroad Co. v. Speer, 156 Ill. 244 ( 40 N. E. Repr. 835); Central Railroad & Banking Co. v. Newman, 94 Ga. 560 (21 S. E. Repr. 219); Menger v. Laur, 55 N. J. L. 205 (26 Atl. Repr. 180).

OPINION BY MR. JUSTICE FELL, June 2, 1908:

The testimony on which the plaintiff relied to establish negligence on the part of the defendant was this: The defendant, in order to furnish electricity for lighting a dwelling house in a rural district, extended two wires from the top of a pole thirty feet high to a transformer which was fastened to the side of a tank house that was on the top of the dwelling. The pole was on the bank of a country road nearest the dwelling and the wires were 120 feet in length and were suspended thirty feet from the ground over private property. They were from four to six inches apart and seven feet above the roof of the dwelling, and eight inches from the wall of the tank house to which they were fastened. The wires were coated with rubber, over which there was a canvas cover that had become weather-worn and frayed, and in places hung in shreds from the wire. The rubber coating was unbroken except at one place at a bend in the wire near the transformer, where it was worn or broken off, and an inch of the wire was bare. How long this inch of wire had been bare was not shown. The defendant employed no one whose special duty it was to inspect the wires, but it was the duty of the linemen, who read the meters monthly and installed meters and transformers and made ordinary repairs, to observe the wires and to repair or report any defects. The canvas on these wires had been frayed and hanging in shreds for three months before the accident. The bare wire could be safely handled by a person standing on a dry board or box, and had been handled with bare hands by the plaintiff's witness. To touch it while standing on metal or a wet surface was exceedingly dangerous and would probably cause death.

The plaintiff's husband, James Weir, was a journeyman painter and with two other men, McAfee, a journeyman, and

Keegan, a foreman in charge of the work, was engaged in painting the outside wood and brickwork of the dwelling. They first worked on the top of the tank house and while there they observed the wires below, and one of them remarked that, " it looked like a rag show." Before they went on the roof of the dwelling house, Keegan told Weir, " to be careful of the wires, that he did not know the danger." When they came up a ladder to this roof to work, Weir read the name of the maker and the capacity of the transformer, and remarked, " It isn't the Watts that would fix you, it is the electricity that is in it." What then took place is thus described by the plaintiff's only witness to the occurrence : " Then he went on painting. Mr. Weir was coming down the end of the weather boarding along the mansard roof. Mr. Keegan went to work in the corner and reached his part off the stepladder. Mr. Weir was painting from the bottom up on the brickwork. He got up to the bottom of the transformer. Mr. Keegan told him to wait for the stepladder, that he could reach it off the stepladder over the transformer where there would be no danger. The consequence was he reached between the wires and was struck at the point connecting the wires with the transformer." When shocked he fell from the roof of the dwelling to the roof of a porch below and from there to the ground. Whether his death was caused by the shock or the fall, which broke his neck, was unknown.

This was the case made out by the plaintiff's witnesses and there was nothing in the testimony produced by the defendant that added strength to it or presented it in a different light. Its witnesses corroborated those of the plaintiff and showed that additional and more specific warnings had been given by Keegan to Weir. The only defect that made the wire dangerous was that it was bare for the space of an inch. The rest of it from the pole to the transformer was safe, although the outer canvas cover was worn and frayed. The bare spot was thirty feet above the ground, seven feet above the roof of the building over which the wire passed and at a bend near the transformer. This was a place where no one was likely to go except on rare occasions, and the wire was in a position where no one could run against it or touch it accidentally in ignorance of its presence.

Because of the danger of electricity, companies furnishing it are held to the very highest degree of care practicable to avoid injury to anyone who may be lawfully in proximity to their wires: Fitzgerald v. Edison Electric Illuminating Co., 200 Pa. 540; Daltry v. Media Electric Light, etc., Co., 208 Pa. 403; Alexander v. Nanticoke Light Co., 209 Pa. 571. The rule in regard to the degree of care that will be exacted was clearly announced and rigidly applied in these cases, but their facts, as indicating negligence or fixing its degree, have but slight resemblance to the facts in this case. In the first of them, improperly insulated wires were stretched eight or ten inches over the roof of a building and were in such a position that the person injured was required to move them in order to continue his work. In the second, a heavily charged and unused wire was allowed to hang within a few inches of the ground, close to a driveway near its entrance from a public road to a lawn where children were accustomed to play. In the third, the proprietor of a store was injured by taking hold of an ordinary incandescent light bulb suspended by a cord and using it in the way it was intended to be used. In that case it was held that, while the electric company was not an insurer, a presumption of negligence arose and the burden of explanation was upon it, and it was said in the opinion by our Brother Brown: "Against patent dangers or against those as to which he may have been warned, the user of electricity must of course guard himself, and, if he dallies with them, taking hold, by way of illustration, of an appliance emitting sparks or handling an uninsulated wire after having been warned not to do so, he voluntarily places himself in peril and cannot recover, if injured." These cases establish a high standard of duty for electric companies, but they do not relieve a plaintiff from the consequence of his own neglect, nor impose on a defendant liability for an accident that was not in reason to be foreseen and guarded against.

But, if we assume that there was sufficient evidence of the defendant's negligence to require the submission of that question to the jury, we find no warrant for submitting the question of wanton negligence and the maintenance of a common nuisance, nor for the instruction that, notwithstanding the negligence of the deceased, there could be a recovery if there was

an inequality in the degrees of negligence, that on his part being ordinary or "light" negligence, and that on the part of the defendant wanton or "heavy" negligence. There was no evidence of wanton negligence, of an intention to injure, or of a reckless disregard of the safety of others. The full extent of the defendant's default was that the rubber covering was off an inch of wire that was securely fastened to the side of a private house seven feet above any place from which it could be reached. Of this defect no one had actual or constructive notice. No one knew whether it had been off an hour or a year. The defendant's agents had not looked to see. If it was negligent, this was the full measure of its neglect.

The doctrine of comparative negligence has not been recognized in our state. Any negligence on the part of a plaintiff that contributes to, and is the proximate cause of, his injury defeats his action. There can be no balancing or matching of degrees of negligence. This has been held so rigidly that in Monongahela City v. Fischer, 111 Pa. 9 ; Oil City Fuel Supply Co. v. Boundy, 122 Pa. 449, and Mattimore v. Erie City, 144 Pa. 14, the judgments were reversed because of the use of the word "material" to qualify the degree of the plaintiff's negligence. Railway Co. v. Boudrou, 92 Pa. 475, and Railway Co. v. Rosenzweig, 113 Pa. 519, are not in point, and have no relation to the question. In the first, a passenger riding on the rear platform of a crowded street car was struck by the pole of a horse car following, and it was held that under the circumstances he was not negligent, and that, although his position on the platform made the accident possible, it was a condition and not the cause of his injury. It was said in the opinion, quoting from Creed v. Railroad Co., 86 Pa. 139 : "The test for contributory negligence is found in the affirmative of the question, Does that negligence contribute in any degree to the production of the injury complained of ? If it does, there can be no recovery ; if it does not, it is not to be considered." In the second, it was held that the mistake of the plaintiff in getting on the wrong train did not relieve the railroad company from liability for injuries occasioned by the wrongful act of the conductor in putting him off in the dark at a place where there was a network of tracks and switches on which trains and engines were moving. The plaintiff's duty to ex-

ercise care for his safety after he had been put off was fully recognized, and the instruction was given that any negligence on his part after he had been ejected would defeat his right to recover.

We are of opinion that the negligence of the deceased was so clearly established by the plaintiff's witnesses that a non-suit should have been entered or a verdict directed for the defendant. He knew the wires were charged with electricity, and that they were dangerous. He may not have observed the break in the rubber cover which was before his eyes, nor comprehended its significance, but he was twice warned of the danger, and directed not to attempt to paint above the wires while standing on the roof. Notwithstanding these warnings he persisted in doing the work in the most danger-ous manner, and deliberately placed his arm between the wires, which were six inches apart, and attempted to paint the wall above and eight inches back of them. This was simply trifling with a danger of which he was conscious. His death, as in the case of the plaintiff's husband in Wood v. Dia-mond Electric Co., 185 Pa. 529, who touched a screen which he had been told was charged with electricity from a defect-ively insulated wire, " was the result of his own voluntary and deliberate act."

The judgment is reversed and judgment is now entered for the defendant.