Fries, Admrx. *v.* Ritter, Appellant.

Argued January 12, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*J. D. Shein,* with him *James C. Crumlish, Jr.* and *Joseph P. Breslin,* for appellants.

*Isadore H. Bellis,* with him *Arnold M. Kessler* and *Bernstein & Bernstein,* for appellees.

472

OPINION BY MR. JUSTICE BELL, March 14, 1955:

Defendants ask for judgment non obstante veredicto and for a new trial because the verdict in the survival action was excessive.

On May 20, 1950, about 11 o'clock A.M., Patrick Fries, 9 years of age, was riding a bicycle south on Pennsylvania Avenue in Prospect Park, Delaware County, which intersected at right angles with 9th Street, but thereafter came to a dead end. His brother, William, 4½ years old, was riding on the handlebars. He intended to turn left and go east on 9th Street. When he was approximately 130 feet north of the corner he looked across the open lot on his left and saw defendant's truck, which was about to make a left turn from Summit Avenue and go west on 9th Street. At that point the truck was approximately 260 feet away from him. As Patrick neared 9th Street he saw a tar spot in the road and turned his bicycle from the right side of Pennsylvania Avenue to a foot or two to the left of center. When he was about 60 feet north of 9th Street he saw the truck on 9th Street at about the same distance as he was from the corner of 9th Street and Pennsylvania Avenue. When he saw the truck was apparently not going to stop he tried to put on his brakes, but the brakes would not work. The bicycle and the truck collided; William was killed and Patrick was seriously injured.

The speed of the bicycle and the truck and the exact position of the collision are unknown, but the evidence disclosed (a) Patrick woke up lying on Pennsylvania Avenue about even with the north curb of 9th Street; (b) his bicycle was on the sidewalk of the northeast corner with its front wheel smashed; and (c) the truck stopped on 9th Street a couple of feet out from the north curb and 50 feet west of Pennsylvania Avenue.

The law is clearly settled; the difficulty arises in close cases such as this of applying the principles to the facts. Plaintiff must prove by a fair preponderance of the evidence that defendant was guilty of negligence and that defendant's negligence was the proximate cause of the accident. Plaintiff must also make out a case free from contributory negligence and the mere fact that a collision took place is not evidence or proof of negligence: *Brusis v. Henkels,* 376 Pa. 226, 102 A. 2d 146; *Finnin v. Neubert,* 378 Pa. 40, 105 A. 2d 77; *Lewis v. Quinn,* 376 Pa. 109, 101 A. 2d 382; *Ebersole v. Beistline,* 368 Pa. 12, 82 A. 2d 11.

It is not necessary to prove the accident by eye witnesses, but where circumstantial evidence is relied upon to prove negligence the evidence must be such as to enable the jury to conclude—not by conjecture or guess but—as a reasonable and legitimate inference that the accident was caused by the negligence of the defendant. In order to do so the evidence must clearly and sufficiently describe or picture the happening of the accident in such a manner that the only reasonable inference and conclusion from the facts and circumstances which were proved is that defendant was negligent: *Ebersole v. Beistline,* 368 Pa., supra; *Finnin v. Neubert,* 378 Pa., supra.

Considering the evidence and all reasonable inferences therefrom in the light most favorable to plaintiff, as we must sur a motion for judgment non obstante veredicto—*Finnin v. Neubert,* 378 Pa., supra—the jury could reasonably and legitimately have concluded that defendant's truck driver, looking across an open lot with no traffic on either street, could have seen plaintiff's bicycle some 200 feet away and when the truck neared the corner of 9th Street and Pennsylvania Avenue the driver could have seen that the bicycle was probably not going to stop.

Where an automobile driver sees a child who is in a place of danger or has reasonable grounds to apprehend that the child may run or may ride his bicycle into the path of the automobile, a higher degree of care is required than under ordinary circumstances, and in such a case it is his duty to exercise such a reasonable degree of care as the circumstances require. Cf. *Robb v. Miller*, 372 Pa. 505, 94 A. 2d 734; *Chapple v. Sellers*, 365 Pa. 503, 76 A. 2d 172; *Silberstein v. Showell, Fryer & Co. (No. 1)*, 267 Pa. 298, 109 A. 701; *Van Buren v. Eberhard*, 377 Pa. 22, 104 A. 2d 98.

In the instant case the jury could properly have found (1) that defendant's driver had ample time not only to see the boy but to realize that he was likely to ride his bicycle into the path of the truck, and (2) that the driver had sufficient time to stop his car if he had exercised the reasonable care and control which were necessary under the circumstances. While the distance an automobile travels after an accident may or may not, depending on the circumstances, indicate negligence, the facts and circumstances present in the instant case justified the jury in finding that defendant's truck was not under proper control and that the defendant by the exercise of proper care could have avoided the collision. The lower Court therefore correctly refused defendants' motion for judgment non obstante veredicto.

With respect to the question of a new trial, we note that the jury made a number of specific findings of fact.

The jury gave a verdict to Patrick's parents in the amount of $3,205.00:—$500.00 for Patrick's earnings to age 21, less his keep, reduced to present worth; and expenses: hospital bill $355.25, doctor $350.00, and future operations and care $2,000.00.

The jury gave to Patrick's guardian for pain and suffering, past and future, $3,000.00. The femur of Patrick's leg was fractured; he was in the hospital on three occasions, the first time for approximately two weeks, the second time, one week and the third time four or five days; his leg was in a cast for six months; thereafter he continued to use crutches for another six months. He had a scar over his eye two inches long and an eight inch scar from the middle of the leg to the knee. He had a two inch shortening of one leg, so that he cannot play sports as he did before the accident. While he did not have any pain at the time of the trial he had to have a future operation. We believe that $3,000.00 for pain and suffering was certainly not excessive.

However, we are concerned with the verdict of $25,000.00 awarded to Kathleen Fries, Administratrix of the Estate of William Martin Fries, the four year old boy who was killed:

"1. As to William Martin Fries, deceased:
To Kathleen Fries, Administratrix,

|  |  |  |
|---|---|---|
| a. | Earnings to age 21, less William's keep, reduced to its present worth (under the Death Act) | $ 500.00 |
| b. | Funeral bill of $295.50 (under the Death Act) | 295.50 |
| c. | Loss of William's earning power after age 21, less his maintenance, reduced to its present worth (under Survival Act) | 24,204.50 |
|  | Total of a, b, & c | $25,000.00" |

Although this was the correct test, see: *Murray v. P.T.C.*, 359 Pa. 69, 58 A. 2d 323, loss of earning power

is a subject which is offtimes difficult of ascertainment. In *Hankins v. Mack*, 364 Pa. 417, 72 A. 2d 268, this Court had occasion to consider the difficulties inherent in such an evaluation. Justice LINN, speaking for the Court, observed that "While the speculative difficulties always present in arriving at proper compensation in suits for the benefit of deceased minors' estates are not to be solved by mere comparison with other cases, we may refer to the recent case of Liguori v. Phila., 351 Pa. 494, 41 A. 2d 563 (1945) in which the verdict of $12,500 was sustained, and in which it appeared that the plaintiff lived for seven months and suffered severely." In the *Liguori* case, although decedent was somewhat older than the deceased minor in the present case, the situation was not much different than here. In the *Hankins* case, a verdict of $30,-000 was reduced to $15,000 by this Court. There the decedent was nine years old, a healthy boy and at the head of his class in school. Comparing the facts in William Fries' case with those in the cases above referred to, the conclusion that the verdict in favor of the administratrix of this estate for loss of earning power was excessive cannot be avoided. A majority of this Court are convinced that that part of the verdict should be reduced to $18,000.00.

This Court has the power under Section 2 of the Act of May 20, 1891, P. L. 101, 12 PS §1164, to reverse or open or vacate a judgment and "to make such order as it deems proper and just": *Downes v. Hodin,* 377 Pa. 208, 104 A. 2d 495; *Falk & Co. v. South Texas Cotton Oil Co.,* 368 Pa. 199, 82 A. 2d 27.

The judgment entered on the verdict of the jury awarding to Kathleen Fries, Administratrix of the Estate of William Martin Fries, deceased, the sum of $24,204.50 for "loss of William's earning power after age 21, less his maintenance reduced to its present

worth (under Survival Act)" is opened and is hereby reduced to $18,000.00; in all other respects the verdict is confirmed. Judgment is here entered on the verdict as thus modified.

---

OPINION CONCURRING AND DISSENTING IN PART BY MR. JUSTICE MUSMANNO:

I concur in the affirmance of the lower Court's refusal to enter judgment n.o.v. I dissent, however, from the Majority decision to reduce to $18,000 the verdict of $25,000 awarded to the Administratrix of the estate of William Martin Fries, deceased.

The Carlisle Tables of Mortality give to a child of 5 years of age a life expectancy of 51 years. Thus, at the age of 21, William Fries could have looked forward to 30 years of remunerative employment. Assuming an income of $80 per week (the amount earned by his father) and $45 a week for maintenance, he would thus have, beyond his maintenance, the amount of $35 per week to save, invest or spend as he saw fit. On the basis of a 4% increment over the years, the present worth of the total amount, less maintenance, would be approximately $31,000. Therefore, it would appear to me that the sum of $24,204.50 for loss of earning power, less maintenance, would not be excessive.