Karcesky, Appellant, *v.* Laria, Appellant.

228

Argued March 17, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*John D. Ray,* with him *Peter P. Zion* and *Reed, Ewing & Ray,* for plaintiffs.

*Oran W. Panner,* with him *Thompson Bradshaw* and *Bradshaw & Panner,* for defendant.

*Earl J. Schermerhorn,* with him *Peter P. Zion* and *Smith & Schermerhorn,* for additional defendant.

OPINION BY MR. JUSTICE BELL, May 24, 1955:

Plaintiff's motion for a new trial based upon the inadequacy of the verdict was refused by the Court below. Laria and Werner each moved for a judgment n.o.v. and each motion was refused by the Court below. These appeals followed.

Plaintiffs walked across Seventh Avenue *in the middle of the block* between 12th and 13th Streets in Beaver Falls, Pennsylvania, at approximately 7:15 o'clock P.M. on March 16, 1951. The street lights were on. Laria, the original defendant, was driving his car north on Seventh Avenue which is 66 feet in width ·from curb line to curb line. The street is wide enough for diagonal parking in addition to four marked lanes of traffic, lanes numbers 1 and 2 accommodating northbound traffic, and lanes numbers 3 and 4 accommodating southbound traffic. Laria was driving in lane number 2 on the left side of the *northbound* portion of the highway. Werner, the additional defendant, was *driving south* on Seventh Avenue following the automobile traffic in his left lane (lane number 3).

Plaintiffs walked out beyond the parked cars, looked to their left and saw Laria a block and a half away. Plaintiffs then walked to about the center of the street (Seventh Avenue) when they stopped to let southbound traffic (including Werner's car) pass them. Plaintiffs then looked to their left and saw Laria's car about a block away; *they never saw it again 'until after the accident,* and so far as the evidence showed, they never looked again to their left, whence Laria's car was approaching.

Karcesky testified that after the line of cars in Werner's lane had passed by, "I started to take a step across the [center] line, and that's the last I knew." Laria testified two people walked into the side of his

car. The jury might well have found a verdict for defendants.

### Werner

Karcesky testified several times that the southbound traffic (Werner's) *had passed by and cleared him and his wife* "when I was starting to step across the center line." "Q. And while you were standing there, did any car traveling south in lanes 3 or 4 strike you . . .? A. No, sir."

Mrs. Karcesky testified she was struck by an automobile but did not know which automobile it was. Plaintiffs called Mrs. Werner as their own witness and called Mr. Werner as if under cross-examination. Both Mr. and Mrs. Werner testified that Mr. Werner did not hit the plaintiffs and their evidence corroborated plaintiffs' evidence, viz., that Werner was free of any negligence. Since the testimony of Mr. and Mrs. Werner was not contradicted, plaintiffs are bound by it: *Readshaw v. Montgomery*, 313 Pa. 206, 169 A. 135.

Werner testified positively that he did not hit the plaintiffs and that he heard a screeching of brakes as Laria's car was passing the plaintiffs. The only evidence to possibly connect Werner with plaintiffs' injuries was his voluntary statement several hours later to the police that there was a brush mark on the side of his car.

The jury returned a verdict in favor of Mr. Karcesky in the sum of $3,000. and for Mrs. Karcesky in the sum of $2,000.; and the verdicts were against both defendants.

"The law is clearly settled; the difficulty arises in close cases such as this of applying the principles to the facts. Plaintiff must prove by a fair preponderance of the evidence that defendant was guilty of negligence and that defendant's negligence was the proxi-

mate cause of the accident.": *Fries v. Ritter,* 381 Pa. 470, 112 A. 2d 189.

In *Stauffer, Admr. v. Railway Express Agency, Inc.,* 355 Pa. 24, 47 A. 2d 817, the Court said (page 25): ". . . It is not enough to show merely that an accident occurred, or that it may have happened from any of several causes, equally probable, for only one of which the defendant would be responsible; a jury cannot be allowed to find a verdict on the basis of a mere guess or conjecture; . . ."

We agree with plaintiffs that Werner was not responsible for their injuries. Plaintiffs' evidence, whether considered alone or with all the other evidence in the case was insufficient to establish negligence on the part of Werner, the additional defendant, and judgment will be here entered in his favor non obstante veredicto.

### Laria

The testimony involving Laria, the original defendant, was meager but sufficient to take the case to the jury. Mrs. Karcesky testified that she was hit by an automobile. Laria admitted that he saw plaintiffs standing in the center of Seventh Avenue when he was 40 feet from them, and that he never looked or saw them again until he was passing them, at which time he saw out of the corner of his eye "something fell". He instantly put on his brakes and "stopped dead". Plaintiffs were found lying on Seventh Avenue, Mrs. Karcesky with her head on the center line and her body extending in a southeasterly direction to a point within 4 feet from the left front wheel of Laria's car. Karcesky was found about 3 feet from the left rear wheel of Laria's car. *Marks were found on the left front bumper and left front fender of Laria's car, and Mrs. Karcesky's purse was found "sitting on the left front fender of the Laria car".* Laria denied hit-

ting the plaintiffs, but at one point admitted that "two people had walked into the side" of his car.

It is well settled that the mere happening of an accident or a collision between an automobile and a pedestrian is not evidence or proof of negligence and plaintiffs cannot recover if they were guilty of contributory negligence: *Thompson v. Gorman,* 366 Pa. 242, 77 A. 2d 413; *Fries v. Ritter,* 381 Pa., supra.

No one saw Laria's car strike the plaintiffs and there was no proof of the speed of his car, although the fact that he stopped so quickly makes it obvious that he was driving slowly.

"It is not necessary to prove the accident by eye witnesses, but where circumstantial evidence is relied upon to prove negligence the evidence must be such as to enable the jury to conclude—not by conjecture or guess but—as a reasonable and legitimate inference that the accident was caused by the negligence of the defendant. In order to do so the evidence must clearly and sufficiently describe or picture the happening of the accident in such a manner that *the only reasonable inference** and conclusion from the facts and circumstances which were proved is that defendant was negligent: Ebersole v. Beistline, 368 Pa., supra; Finnin v. Neubert, 378 Pa., supra": *Fries v. Ritter,* 381 Pa., supra.

The circumstantial evidence in this case was sufficient to make out a prima facie case of negligence on the part of Laria. Plaintiffs were not guilty of contributory negligence merely because they attempted to cross a street between intersections: *Elbell, Admr. v. Smith,* 357 Pa. 490, 55 A. 2d 321; and we cannot say that plaintiffs' failure to look before they took a step forward was, under all the evidence in this case,

---

* Italics throughout, ours.

sufficient to make them guilty of contributory negligence as a matter of law.

## Inadequacy of the Verdict

That brings us to the final question: Did the refusal of the lower Court (the trial Judge) to grant a new trial because of the inadequacy of the verdict constitute a *gross abuse* of discretion? *Carpenelli v. Scranton Bus Company,* 350 Pa. 184, 38 A. 2d 44; *Nikisher v. Benninger,* 377 Pa. 564, 105 A. 2d 281.

Mr. Karcesky offered evidence to prove that he suffered a fracture of the left clavicle and severe contusions to the left forearm and left shoulder which, according to defendant's doctor, were completely healed. He was in the hospital 17 days. His doctors' bills for himself and his wife totaled nearly $1,700.; his hospital expenses were approximately $1,000., and he claimed a loss of wages of $720.00 We believe it is clear that the jury gave Karcesky a sympathy verdict to cover the actual costs and expenses of his and his wife's injuries and what they believed was his actual loss of wages.

Mrs. Karcesky offered evidence to prove that she suffered fractures of three front teeth, a fracture of the sacrum, and of the pelvis, and of the left fibula, a sprain of the lower back, hematoma of the left thigh and small bruises;—all of which injuries were cleared up and healed within a year, according to the defendant's doctor. She was in the hospital 75 days and claimed she could do only part time work for approximately two years, and her future earnings would be impaired. If her testimony and that of her doctors was believed her total loss of estimated earnings would amount to approximately $4,000. The jury's verdict of $2,000. was obviously a sympathy verdict either for pain and suffering or for estimated loss of earnings. The small amount of the verdict for each

plaintiff was obviously due to the jury's belief that the plaintiffs stepped into the path of defendant's car without looking and consequently contributed substantially to their own accident.

The lower Court in refusing plaintiffs' motion for a new trial said: "The contributory negligence of plaintiffs' and negligence of defendant and additional defendant were debatable questions in this case. The verdict could have been for plaintiffs or defendants. Under such circumstances, the amount awarded usually reflects a compromise by the jury in reaching a conclusion on the negligence question. . . . The verdict was substantial. It was more than the actual expenses.* We conclude that a new trial should not be granted."

The doctrine of comparative negligence, or degrees of negligence, is not recognized by the Courts of Pennsylvania, but as a practical matter they are frequently taken into consideration by a jury. The net result, as every trial judge knows, is that in a large majority of negligence cases where the evidence of negligence is not clear, or where the question of contributory negligence is not free from doubt, the jury brings in a compromise verdict. Moreover, it is important to remember that neither a jury nor a judge who sees and hears the witnesses have to believe everything or indeed anything that a plaintiff (or a defendant) or his doctor, or his other witnesses say, even though their testimony is uncontradicted. In the instant case twelve reasonable men could have serious doubt as to whether Laria was negligent; and if Laria was negligent, whether the accident was caused by his negligence or by the contributory negligence of the plaintiffs or partly by the negligence of each of them. Under such circumstances,

---

* The verdict also included some loss of wages, and the wife received a rather small but substantial verdict for pain and suffering.

a jury usually does what this jury did, namely, render a compromise verdict which is much smaller in amount than they would have awarded (a) if defendant's negligence was clear, and (b) if they were convinced that plaintiffs were free from contributory negligence.

Where the evidence of negligence or contributory negligence, or both, is conflicting or not free from doubt, a trial judge has the power to uphold the time-honored right of a jury to render a compromise verdict, and to sustain a verdict which is substantial—a capricious verdict or one against the weight of the evidence or against the law, can and should always be corrected by the Court.

Where the verdict is, as here, substantial, a new trial "for inadequacy" should be granted only when the trial court is convinced the verdict is so unreasonably low as to present a clear case of injustice even in the light of the doubtful negligence of defendant or the doubtful contributory negligence of the plaintiff, or both: Cf. *Takac v. Bamford,* 370 Pa. 389, 88 A. 2d 86; *Nikisher v. Benninger,* 377 Pa., supra; *Carpenelli v. Scranton Bus Company,* 350 Pa., supra.

The law is thus stated by Mr. Justice STEARNE in the recent case of *Nikisher v. Benninger,* 377 Pa., supra, as follows: ". . . In Carpenelli v. Scranton Bus Company, 350 Pa. 184, [at page 187], 38 A. 2d 44, [at page 45], the rule is accurately stated by Mr. Justice HORACE STERN (now Chief Justice) . . .:

" 'When a court grants a new trial on the ground of inadequacy of the verdict an appellate court, in the absence of a gross abuse of discretion, will not interfere: Schwartz v. Jaffe, 324 Pa. 324, 188 A. 295; Pretka v. Wilson, 325 Pa. 491, 190 A. 722. When a trial court *refuses* to grant relief against an allegedly inadequate verdict an appellate court will exercise even greater caution in reviewing its action. * * *' "

Factually, the instant case is on all fours with *Carpenelli v. Scranton Bus Company*, 350 Pa., supra. In the *Carpenelli* case the preponderance of the evidence on the question of liability was strongly in favor of defendant. Plaintiff proved in that case that he suffered a fracture of the right femur, spent a year in the hospital, had actual medical expenses of $2,600., was permanently disabled from performing any kind of manual work, and had large loss of earnings and earning power. The jury returned a verdict for plaintiff of only $3,000. The lower Court denied plaintiff's motion for a new trial on the ground of the inadequacy of the verdict, and we affirmed. The Court, speaking through the present Chief Justice, said (page 188) : ". . . when liability is admitted by the defendant, or when the evidence is clearly preponderant in favor of the plaintiff, it is likewise possible to say, with some fair measure of certainty, whether the verdict properly covered the items of damage for which recovery should have been allowed or whether it was *inadequate*. But when the evidence is equally divided in weight, or, a fortiori, when the preponderance of testimony is clearly with the defendant and the verdict rendered for the plaintiff, while small, is substantial, the problem becomes one of an entirely different nature, for in such event it can no more reasonably be said that the plaintiff recovered too little than that he should not have recovered at all; therefore, in such a case, it is just as likely, or more likely, that the granting of a new trial would constitute an act of injustice to the defendant rather than one of justice to the plaintiff."

In *Nikisher v. Benninger*, 377 Pa., supra, the trial Court dismissed a motion for new trial on the ground of inadequacy of the verdict, and we reversed, holding the lower Court had grossly abused its discretion. In

that case, however, this Court found that liability of the defendant was conceded. Both cases are therefore reconcilable on their facts, although some of the language in each opinion must be confined to the particular case.

It is apparent that in cases where the question of defendant's negligence and of plaintiffs' contributory negligence are doubtful, the position of an appellate court is sometimes a difficult one. Where, as here, the verdicts are substantial and the plausible and likely view of the accident is that plaintiffs were equally or mostly to blame, we cannot find that a trial Judge who saw and heard the witnesses grossly abused his discretion in refusing a new trial because of inadequacy of the verdict.

Judgment is here entered in favor of additional defendant, Arvid R. Werner, non obstante veredicto.

The judgment entered on the verdict of the jury awarding the sum of $3,000. to John Karcesky, and the sum of $2,000. to Christina Karcesky, against the original defendant, Sam Laria, is affirmed.

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE JONES:

I concur in the court's entry of judgment n.o.v. for Arvid R. Werner, additional defendant, against whom no evidence of negligence was introduced. However, I would grant the plaintiffs a new trial as to Sam Laria, the original defendant, because of the manifest inadequacy of the jury's awards to the plaintiffs. There is no need to repeat here the extent of the plaintiffs' serious injuries, the duration of their consequent incapacity and their loss of earnings. The majority opinion adequately recites the facts in such regard.

The verdict for the injured husband was but $3,000 while his actual out-of-pocket expense for doctors' bills and hospital care for himself and his wife was $2,700. In addition, both the husband and the wife proved substantial loss of earnings which, it is true, the jury was under no compulsion to believe; but, the evidence in regard to loss of earnings was so readily verifiable that for the jury to have disbelieved it was nothing other than the indulgence of caprice.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

John Karcesky, 50 years of age, and his wife, 40, started out after dinner on March 15, 1951, for a leisurely evening in Beaver Falls, their home town. They window-shopped, stopped at several stores, looked over the offerings at a couple of movies and finally decided to take in the show at the Granada theatre on Seventh Avenue. Seventh Avenue is a wide thoroughfare, measuring 66 feet from curb to curb and accommodating not only 4 lanes of traffic but supplying space on either side for diagonal parking. Arriving about 7:30 at a point on Seventh Avenue between 12th and 13th Streets, the plaintiffs proceeded to cross from the east to the west side. The street was clear of traffic with the exception of a car about 400 feet away to their left on Seventh Avenue in the vicinity of the intersecting 11th Street. To the Karceskys' right the traffic was stopped by a red light at 13th Street. They crossed the first two lanes of Seventh Avenue (northbound), and were just about at the center of the street when the traffic from the right (which had been stopped at 13th Street about 250 feet away) now began to move southwardly. The car to the left which had been first seen 400 feet away (and later identified as a Cadillac driven by Sam Laria) was now slowly

moving up Seventh Avenue northwardly toward 12th Street, but still 140 feet away. While standing in the center of the highway waiting for the traffic in front of them (that is, moving southwardly from 13th Street to 12th Street on Seventh Avenue) to pass, both the Karceskys were struck by the Laria car from the rear. One of the cars moving from 13th Street, a Ford driven by Arvid R. Werner, arrived at the scene of the accident just as the plaintiffs were being struck by the Laria car.

At the ensuing court trial the jury returned verdicts in favor of the Karceskys against both Laria and Werner. This Court has now rendered a judgment n.o.v. in favor of Werner. I believe that, aside from the brush mark on Werner's car, there was sufficient circumstantial evidence to show that his car arrived on the scene in time to contribute to the vehicular battering to which both plaintiffs were subjected. The proof of Laria's negligence was direct and unequivocal. There was no reason for Laria not to have seen the Karceskys long before he reached them. Seventh Avenue at this point is a veritable river of concrete on which any person must stand out as conspicuously as a black object on a white sheet. Had Laria displayed the slightest concern about the Karceskys on the street the accident would not have occurred because with the plaintiffs admittedly in the very center of the highway, Laria would not have been where, given the width of the highway, he had no need to be. Laria's testimony factually convicts him of a high degree of negligence: "Q. Now, while you were crossing Twelfth Street on Seventh Avenue, did you become aware of anybody on the street ahead of you — any persons or people: A. I seen two people standing there as I drive along, around the center of the block—I imagine right outside the Rio. Q. I don't get that answer. What

is that? A. Right in the center of the block, I seen two people standing. I didn't know who they were. Q. In the center of what block? A. The center of thirteen—between Twelfth and Thirteenth Street. Q. You mean, you judged that they were about halfway between Twelfth and Thirteenth, is that it? A. Before that—before I reached to that, I seen, the way I was driving, this way— Q. Yes? A. *Out of the corner of my eye, I seen the people standing in the center of the street.* . . Q. As you approached them, go ahead and tell us what happened. A. I just go along the way I was driving. I look *the corner of my eye, this left eye.* I seen something fell, but I stopped immediately, just dead, so I get off the car, and I seen two people was laying there, one alongside—" (Italics supplied)

It is obvious from this testimony that Laria would have done better if, instead of relying only on the corner of his eye, he had used the entire cornea. Anyone who drives on a main highway restricting his vision of pedestrians in the very center of the highway to the corner of his eye admits by that very statement a culpable indifference to the rights of people in his path of travel. There is no possible explanation for the accident except on the basis of Laria's negligence. The plaintiffs stood before him as vividly as ten pins in a bowling alley and, as it developed, he practically accepted them as such targets.

I have devoted this much attention to the negligence feature of this case because of the theory advanced in the Majority Opinion that the inadequacy of the verdicts returned by the jury was possibly due to a conclusion reached by them that the defendant's negligence had not been definitively established.

The Majority justifies its refusal of a new trial on any ground of inadequacy by citing the case of *Car-*

*penelli v. Scranton Bus Company,* 350 Pa. 184. In fact, the Majority says that "Factually, the instant case is on all fours with Carpenelli v. Scranton Bus Company, 350 Pa., supra," and then quotes from the *Carpenelli* case as follows: ". . . When liability is admitted by the defendant, or when the evidence is clearly preponderant in favor of the plaintiff, it is likewise possible to say, with some fair measure of certainty, whether the verdict properly covered the items of damage for which recovery should have been allowed or whether it was *inadequate.* But when the evidence is equally divided in weight, or, a fortiori, when the preponderance of testimony is clearly with the defendant and the verdict rendered for the plaintiff, while small, is substantial, the problem becomes one of an entirely different nature, for in such event it can no more reasonably be said that the plaintiff recovered too little than that he should not have recovered at all; therefore, in such a case, it is just as likely, or more likely, that the granting of a new trial would constitute an act of injustice to the defendant rather than one of justice to the plaintiff."

The Karceskys are entitled or not entitled to a verdict and if the facts justify a verdict they should receive the full measure of the damages which the injuries warrant. John Karcesky's doctor and medical bills for both himself and his wife totaled $2,750. Their total damages in expenses and loss of wages amounted to $7,350, excluding impairment of earning power and pain and suffering, both substantial items. Yet the combined verdict amounted to only $5,000. When a verdict is $2,350 less than the actual out-of-pocket expenses, it is obviously inadequate and, being inadequate, something less than justice has been done. The *Carpenelli* case seeks to rationalize injustices of

242

this character by stating that. it is possible the plaintiff should have received no verdict at all.

. I believe that the time. has come. to retire the *Carpenelli* case as authority. ·It. cannot be supported in law or in logic. It is obvious that when the evidence in a trespass case does not prove negligence the plaintiff receives nothing. This Court has reversed countless verdicts, entering judgments n.o.v., on the proposition that no negligence was proved against the defendant in the case. It. has likewise deprived countless plaintiffs of verdicts on the proposition that although the defendant was proved guilty of negligence, the plaintiff contributed to the happening of. the accident through what is known as contributory negligence. But in the *Carpenelli* case the Majority. did not say that the defendant was without negligence, nor did it say that the plaintiff was guilty of contributory negligence. Nonetheless the plaintiff was denied a fully compensatory verdict because, the Majority argued, the plaintiff himself was partly responsible for the accident.

It is to be noted here that the *Carpenelli* decision was rendered by a Court divided 4 to 3, with the Minority filing a vigorous Dissenting Opinion. Mr. Justice DREW, (later Chief Justice), writing with the concurrence of Chief Justice MAXEY, and Mr. Justice HUGHES, said: ". . It is perfectly clear that the amount of this verdict [$3,000] barely compensates plaintiff for his actual outlay of $2,628.45 for hospital and doctor bills, and gives him practically nothing for the other damages suffered by him, aside from the loss of past earnings or diminution of earning capacity."

Mr. Justice DREW said further: "The jury, by its finding in favor of plaintiff, determined that his injuries were caused by defendant's negligence and that he himself was free from contributory negligence.

It is undisputed that as a result of the accident plaintiff suffered a fractured thigh bone close to the point where it joins his body, that he was confined in the hospital for approximately a year, most of which he spent in bed, that he had three operations up to the time of trial in an attempt to reset and cause the bone to heal, that his leg is still 1 1/2 inch shorter than the other and there is no complete union of the bone, that he will never be able to follow his trade as a stone mason. It is also undisputed that he has and will continue to suffer much pain and inconvenience."

In categorically condemning the Majority Opinion, Mr. Justice DREW used the following vigorous language: "After reading this record, I cannot concur in the conclusion which the majority has reached. In view of the very serious and permanent nature of plaintiff's injuries, his great expense for hospital and medical attendance, the pain and suffering which he has and will endure as a result of the negligence of the defendant, and his loss of past and future earnings, I am convinced that the verdict is, as was said in Palmer v. The Leader Publishing Co., 75 Pa. Superior Ct. 594, 598, so unreasonable as to bring conviction 'the jury must have been influenced by partiality, passion or prejudice or by some misconception of the law or the evidence.' Under these circumstances, *it is a denial of justice, in my opinion, not to grant a new trial to plaintiff on account of the verdict's inadequacy.*" (Emphasis supplied).

This is another instance in the law where a Minority Opinion could well be the Majority decision and unquestionably will some day express the view of this Court. Vigorous as was Chief Justice DREW's language in that case it still was restrained in the light of what the Majority Opinion did. It stultified in Pennsylvania the law on inadequacy of verdicts in a

manner which could throw it into the shadows of wonderment leading to the gloom of disrespect. It agitated the waters of the question as to whether we do or do not have comparative negligence in Pennsylvania without settling them with a definitive expression of policy. In *Weir v. Haverford Elect. Light Co.*, 221 Pa. 611, 617, this Court said: "The doctrine of comparative negligence has not been recognized in our State. Any negligence on the part of a plaintiff that contributes to, and is the proximate cause of, his injury defeats his action. There can be no balancing or matching of degrees of negligence."

In 1943, in the case of *Kasanovich v. George*, 348 Pa. 199, Mr. Justice STERN (now Chief Justice and the writer of the Majority Opinion in the Carpenelli case) said: "At the outset it may be well to reiterate what was said in Weir v. Haverford Electric Light Co., 221 Pa. 611, 617, 70 A. 874, 876: 'The doctrine of comparative negligence has not been recognized in our state. Any negligence on the part of a plaintiff that contributes to, and is the proximate cause of, his injury defeats his action. There can be no balancing or matching of degrees of negligence.' "

Yet, the following year, Chief Justice STERN in the *Carpenelli* case practically invoked the doctrine of comparative negligence through the argument that the plaintiff should be satisfied with the unsatisfactory verdict he received because: "In the number of witnesses, in their disinterestedness, in the clarity of their testimony as to the happening of the accident, in the plausibility of their version of the occurrence,—in all these factors the advantage was markedly on the side of defendant."

The Court below in the *Carpenelli* case said: "The verdict seemed to the court to be merely a sympathetic verdict, not warranted by the weight of the evidence."

This would indicate that the Trial Court also invoked the comparative negligence doctrine and the Majority of this Court did not see fit to disavow it.

I agree with the Minority of the Court in the *Carpenelli* case that the Majority decision was unjust, but the wounds it inflicted on Carpenelli have probably been healed by the poultice of time. However, the harm of the *Carpenelli* decision lies in the fact that as an unsheathed sword it goes on inflicting wounds on others, as indeed it has now been used in the case at bar to deprive, in my opinion, the Karceskys of a verdict commensurate with the losses they have sustained.

It is somewhat comforting to note that one decision recently handed down may serve to blunt a little the sharp edge of the *Carpenelli* sword. Chief Justice STERN said in the *Carpenelli* case: "Indeed, it would seem that it is only where the verdict was merely nominal that the appellate courts have looked askance on a refusal of the trial court to set it aside and grant a new trial." Commenting on this statement in the case of *Nikisher v. Benninger*, 377 Pa. 564, 567, Mr. Justice ALLEN STEARNE said: "But by the use of this language we did not state, or intend to decide, that a new trial because of inadequacy would be granted *only* where the verdict was *nominal.*" Thus, in the case at bar it seems to me that a new trial should not be refused merely because the sum awarded by the jury is not merely nominal. Five thousand dollars is a substantial sum but it can never fill a pocket book that has already been emptied of at least $7,350.

I have said, and I repeat, that the logic in the Majority Opinion in the Carpenelli case leaves much to be desired. There, Mr. Chief Justice STERN said: "When the complaint is that a verdict is excessive the problem is comparatively simple, because a conclusion may

fairly be reached as to the maximum amount to which the plaintiff was entitled and therefore any sum beyond that amount necessarily represents an improper recovery."

Thus, he finds an easy solution when the verdict is excessive but encounters a problem when the verdict is inadequate. But if the jury has returned a verdict for the plaintiff, why should the determination as to whether it is inadequate be any more difficult than the ascertainment as to whether it is excessive? Assuming that in a given case a reasonable verdict should be $10,000, why would it be easy to say that a verdict of $13,000 would be too much, but it would be a problem to say that $7,000 is not enough? Why is it that when the verdict is less than it might reasonably be, according to the proof of injuries and losses, the Court must then weigh the evidence as to the negligence when the jury has already passed on the issue of negligence? Of course, where the verdict is clearly against the weight of the evidence, the remedy of a new trial is quickly available. But if the verdict is not against the weight of the evidence, on what authority of law may an appellate court take out an apothecary scale to determine whether, in the words of Chief Justice STERN, "the evidence is equally divided" or that "the preponderance of testimony is clearly with the defendant," and on that basis decree that the verdict should be less than what the proof of damages shows?

If the slightest degree of contributory negligence will deny the plaintiff any recovery at all, no matter how negligent the defendant may be (excluding, of course, wanton misconduct), on what basis can the plaintiff be denied a full recovery where contributory negligence is not proved? On the other hand, if there is *no* adjudication of contributory negligence on the part of the plaintiff and there *is* adjudication of neg-

ligence on the part of the defendant, on what basis can an appellate court intervene to whittle down a verdict by assuming that the plaintiff probably was guilty of some contributory negligence and the defendant may have not been too guilty of negligence? An appellate court could interfere in such a situation only by proclaiming the doctrine of comparative negligence. Do we then have that doctrine in Pennsylvania?

As above indicated, this Court declared in *Weir v. Haverford Elect. Light Co.,* supra, and in *Kasanovich v. George,* supra, and recently in *Hucaluk v. Clyde Realty Co.,* 378 Pa. 169, that Pennsylvania is not a comparative-negligence State. Yet the *Carpenelli* decision is acceptable only on the basis that it placed comparative negligence on the scales of decision. And now that the *Carpenelli* case has been cited in the case at bar as authority for affirmance of an inadequate verdict, does that mean that this Court stamps an imprimatur on comparative negligence? If it does, then the doctrine must be applied methodically and not spasmodically. This Court or the Legislature will need to establish procedure and norms of appraisal such as perhaps those which are now embodied in the Federal Employers Liability Act.

However, until that is done, I believe that the views expressed by the Minority in the *Carpenelli* case should be recognized as the law of this State. On that basis I believe that this Court, in the interests of justice and clarity in the law, should overrule the *Carpenelli* decision as being unworthy of the jurisprudence of Pennsylvania.