Dissenting Opinion by
Hoffman, J.:
This trespass action arose from a head-on collision on November 10, 1962, between automobiles driven by plaintiff-wife, Shirley Budman and defendant, Howard Landis. As a result of the collision, plaintiff-wife and plaintiff-husband, Eobert Budman, filed suit against defendant for personal injuries and property damage.
A jury trial was held on June 9-13, 1966. The jury returned a verdict for the plaintiff-husband in the amount of $2500.00 and for plaintiff-wife in the amount of $1500.00.[1] Counsel for plaintiffs moved for a new trial'on the ground that the verdicts were inadequate. The lower court en banc denied the motions for a new trial, and from that denial, this appeal followed.
Plaintiff-wife sustained special damages in the amount of $1,160.10, and was awarded a verdict of $1500.00 for her stated specials. The resulting sum of $339.60 was, therefore, for pain and suffering and permanent disfigurement.[2] In my opinion, the sum awarded for pain and suffering, and permanent disfigurement *286 and deformity, is entirely inadequate, and I would award her a new trial.
The lower court maintained that the verdict for plaintiff-wife must be sustained on the ground that a compromise verdict was reached. The theory of compromise verdicts has been accepted by our Supreme Court in Carpenelli v. Scranton Bus Co., 350 Pa. 184, 38 A. 2d 44 (1944). See also Karcesky v. Laria, 382 Pa. 227, 114 A. 2d 150 (1955). Such a verdict is only permissible when the “. . . evidence is equally divided in weight . . . and the verdict rendered for the plaintiff, while small, is substantial . . .” Carpenelli v. Scranton Bus Co., supra, at 188. The Court in that case also stated that “. . . when the evidence is clearly preponderant in favor of the plaintiff, . . .” [at 188] it is improper to sustain a verdict as adequate if the court feels a compromise was reached. As succinctly stated in Todd v. Bercini, 371 Pa. 605, 92 A. 2d 538 (1952) : “When it is apparent that a jury by its verdict holds the defendant responsible for a whole loaf of bread, it may not then neglectfully, indifferently, or capriciously cut off a portion of that loaf as it hands it to the plaintiff.” at 608.
Upon a careful review of the record, it is my view that no compromise verdict was reached. Plaintiff-wife, Mrs. Budman, and defendant were the only eyewitnesses to the collision. Mrs. Budman testified as follows:
“Q. And as you were proceeding down the road, vvhat happened, please?
“A. I saw this car coming up. I saw him coming, and he was on his own side of the road, and I had no idea he was going to cut across in front of me, and it all happened so fast, I just saw — I just his eyes in front of me.
“Q. What happened with this other car as you approached each other?
*287 “A. He was on Ms side of the road, and he came over toward mine, and just came right up and — ”
Mrs. Budman further testified that she was on her own side of the road. The defendant was called to testify but could not remember anything about the accident. A doctor testified that the reason the defendant had no recollection of the accident was because he sustained retrograde amnesia as a result of the collision. Consequently, Mrs. Budman’s testimony, to the effect that defendant’s car cut across the road and into her path, was uneontradicted by direct testimony.
Several other witnesses testified, but none were eyewitnesses. A State Trooper investigating the accident testified as to the position of the automobiles and where certain items of debris were found. He said that glass was scattered over a sizeable area, and that water, apparently from the radiators of the cars, and fender dirt from the cars was in the lane in which Mrs. Budman was travelling. Another witness stated that she saw glass all over the area of the collision, and that most of the glass was between the cars. Another witness testified that he thought most of the glass was on the Landis’ side. The repairman who towed the cars stated that the windshield of the Landis car was in its own lane, but that other parts of the two cars were on the Budman side of the road. The several witnesses differed as to the precise position of the cars.
The equivocal and contradictory nature of the witnesses’ testimony as to the location of the debris makes it impossible to draw therefrom any reasonable inferences as to the negligence of the parties. Moreover, any support drawn from the witnesses’ testimony other than Mrs. Budman’s testimony to sustain a compromise verdict is mere conjecture in light of this record. *288 The only direct, uneontradicted testimony regarding the collision came from the lips of Mrs. Bndman. On this state of the record, a finding that defendant was negligent is required by a preponderance of the evidence. Accordingly, it is my view that no compromise verdict was, or could have been, reached by the jury.
Mrs. Budman sustained severe injuries as a result of the collision and suffered extreme pain and discomfort. The record is uncontradicted as to the extent of her injuries. Specifically, she sustained a concussion with loss of consciousness, fractured dentures, fracture of the left humerus that has left her permanently disabled, colles fracture of the right wrist with visible permanent deformity, fractures of the fourth, fifth and sixth ribs on the left, hemothorax of the left thoracic cavity, with atelectasis and resulting pneumonia in addition to severe lacerations of the chin, left knee, and left thigh, resulting in permanent scarring.
Mrs. Budman suffers from an asthmatic condition, which made treatment after accident more painful and difficult. In place of the more medically desirable general anesthesia, novocain was used and proved very painful to her while her broken bones were being set. She was initially hospitalized for a period of nineteen days, and required positive pressure breathing and extreme doses of pain killing medication as well as an indwelling catheter. The pain which she experienced was so intense that the doctor who treated her testified as follows:
“Q. Now, I believe the pain medications you were using were demerol, is that correct?
“A. Yes, sir.
“Q. In what dosages were you using this?
“A. Well, we used it in a dose of 100 milligrams, which is the dose for the average 200 pound man to relieve pain.
*289 “Q. And Mrs. Budman was not a 200 pound man?
“A. That’s right.
“Q. What would be the normal dosage for pain for a person of her general build?
“A. 50 or 75.”
Mrs. Budman also experienced great trouble in sleeping and had to be given seconal. After she left the hospital, the doctor testified that her wrist had not healed properly. Consequently, Mrs. Budman entered the hospital again for a week’s stay. The doctor had to break the right wrist again with external force and reset it. Thus, Mrs. Budman, who also sustained a broken left arm, had both arms in casts for an extended period.
Mrs. Budman went back to work some time in March of 1963, but could not reach as high as she had before or lift heavy objects. As noted above, she suffers a permanent inability to extend her left elbow by 33 1/3%, making it impossible to reach the back of her head.
Thus, beside the permanent scarring as a result of the lacerations received in the accident, Mrs. Budman has a permanently disfigured right wrist and a permanent disability associated with her left elbow. Although I have given a capsule report of her injuries, the record is replete with testimony as to each injury and the pain and suffering experienced by Mrs. Bud-man.
In light of the above record, Mrs. Budman was only nominally compensated for substantial pain and suffering and permanent deformity and disfigurement. Admittedly, the determination of what is a “substantial” verdict is a most difficult determination, and our Courts have struggled with the concept in several cases. See, e.g., Nikisher v. Benninger, 377 Pa. 564, 105 A. 2d 281 (1954); Schmidt v. Kratzer, 402 Pa. 630, 168 A. 2d 585 (1961); Sharpe v. Steel, 205 Pa. Supe *290 rior Ct. 95, 208 A. 2d 43 (1965). We have been loathe to award a new trial on the grounds of an inadequate verdict where substantial justice has been accorded a plaintiff, and I readily concur in this position. See Rhoades v. Wolf, 207 Pa. Superior Ct. 104, 215 A. 2d 332 (1965).
However, it is my opinion that the award for pain and suffering and disfigurement was grossly inadequate in the case at bar. Since there is ample evidence in the record to establish defendant’s negligence, I would, therefore, award plaintiff-wife a new trial limited to the issue of damages. See Troncatti v. Smereczniak, 428 Pa. 7, 235 A. 2d 345 (1967).
Spaulding, J., joins in this dissenting opinion.

 Defendant in this case, Howard Landis, commenced an action against Shirley Budman for property damage and personal injury. That suit was consolidated with the above action, and in that case, the jury found for defendant, Shirley Budman.

 Plaintiff-husband’s special damages amounted to $2694.36, and he was awarded $2500.00. If a verdict bears a reasonable resemblance to the proven damages, it will not be upset. Elza v. Chovan, 396 Pa. 112, 152 A. 2d 238 (1959). Here, in my view, the award was well within the range of reasonableness and should therefore be sustained, since the husband was suing only for money expended on behalf of his wife and was not himself involved in the accident.