Murosky, Appellant, *v.* Spaulding.

Argued November 11, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, ERVIN, and WATKINS, JJ. (WOODSIDE, J., absent).

*Will J. Schaaf,* with him *John A. Spaeder,* and *Marsh, Spaeder, Baur, Spaeder & Schaaf,* for appellant.

*John A. Blackmore,* for appellee.

*John E. Britton,* with him *Gifford, Graham, Mac-Donald & Illig,* for appellee.

OPINION BY ERVIN, J., December 9, 1958:

The sole question in this appeal is whether the court below abused its discretion in failing to grant a new trial because of the inadequacy of the verdict.

On June 12, 1955, at approximately 10:00 p.m. on a rainy evening, Thomas R. Murosky was killed in a collision between an automobile driven by Jerome W. Spaulding and one driven by James P. Junod. Murosky was a passenger in the Junod car. In the ensuing lawsuit instituted by Joseph Murosky, father of Thomas Murosky, the jury awarded a verdict in the amount of $3,000.00 in a survival action and $1,332.93 in a death action. From the refusal of the court below to grant a new trial because of the inadequate verdict in the survival action the plaintiff has appealed.

The verdict in the death action is not under attack since the sum returned by the jury in that action was agreed upon during the trial. Three actions grew out of this accident. They were tried together. In two of the cases the verdicts have not been questioned. One of those cases was that of James P. Junod v. Jerome W. Spaulding in which the jury found the plaintiff and defendant both guilty of negligence. The other was that of Jerome W. Spaulding, a minor, by George E. Spaulding, his father and guardian, and George E. Spaulding in his own right, and Marlene Graham, a minor, by Arthur E. Graham, her father and guardian, and Arthur E. Graham in his own right, v. James Junod, George E. Spaulding, guardian ad litem of Jerome W. Spaulding, minor, additional defendant, in which the jury found for Marlene Graham in the sum

308

of $250.00 and for her father $134.50 for medical expenses and $2,176.01 for damages to his automobile. The verdict was against the defendant and the additional defendant, who had been severed as a party plaintiff.

At the trial evidence was presented to show that Thomas Murosky was 21 years old at the time of his death; he was in good health; was attending college at night and was gainfully employed as a tester at the Hammermill Paper Co., a position which required no advanced technical training but one in which the deceased's actual technical training was of help. He attended Cathedral Preparatory School for boys in Erie; he was graduated at the end of a four-year course in June 1952; in the last year of his attendance at preparatory school he worked part time to earn funds to assist his parents and provide a fund to defray his expenses at Gannon College, where he matriculated in the fall term of 1952. While carrying a full time schedule of classes at Gannon College he continued his outside employment to provide the means necessary to defray the expenses of his education and also to continue his aid to his parents for the needs of the family. Upon completing two years of studies and credits toward a career as a chemist and chemical engineer, in September 1954 he took a steady daytime position in the chemistry laboratory at Hammermill Paper Co. in Erie, in which position he applied himself steadily with credit, as borne out by the high praise of his work given by Dr. Alfred H. Croup, managing head of all laboratories at Hammermill. In addition to his steady daytime employment at Hammermill, he was continuing his courses at night classes at Gannon College down to the time of his death, in order to obtain the credits required to qualify him for a Bachelor of Science degree. His starting wage in September 1954 was $1.64

per hour, which grossed $65.60 for a regular 40-hour week. Due to opportunities for overtime his average weekly gross income for 1954 from his starting date on September 20 through the end of December 1954 amounted to $67.87. During the period of 23 weeks from January 1, 1955 to the date of his death on June 12, 1955 his income from his regular employment plus overtime work amounted to an average of $79.18 per week. For the entire period of his employment, which covered 38 weeks from his starting at Hammermill on September 20, 1954 down to the date of death, his average weekly earnings were $71.14. He was an outdoorsman and an athlete and did social work with boys in his spare time. As stipulated at trial, his life expectancy at death was 41.66 years. Out of his weekly earnings decedent paid $15.00 a week for board and room and used most of the balance of his earnings to pay for his education and an automobile. His total savings at the time of his death were $98.00.

In its opinion the court below said: "We apprehend that we are governed in our determination of the instant problem by what was said by the Supreme Court in Karcesky v. Laria, 382 Pa. 227, 235, where it was said: 'Where the verdict is, as here, substantial, a new trial "for inadequacy" should be granted only when the trial court is convinced the verdict is so unreasonably low as to present a clear case of injustice even in the light of the doubtful negligence of defendant or the doubtful contributory negligence of the plaintiff, or both.' We view this statement as involving the following essential elements of consideration: 1. Whether the verdict is substantial. 2. Whether at trial the case presented a substantial doubt as to the negligence of the defendants or the contributory negligence of the decedent." The court below further concluded that the $3,000.00 verdict was substantial and that there was

a substantial doubt as to the negligence of the defendants or the contributory negligence of the decedent. We are unable to agree with these conclusions. It is important to note, however, that the court below said: "We might, and probably would have awarded a much larger sum had the matter been before us as a jury, and had we given any sum at all in view of the doubtful character of the evidence as to liability."

Under the facts of this case we feel that the verdict was grossly inadequate. The evidence clearly indicates that the decedent was a young man who exceeded the average in intelligence, energy, work and social habits. He had a bright future before him and would in all likelihood have enjoyed an active and successful business experience. To say that the paltry sum of $3,-000.00 represents the present worth of his life earnings is absurd. It should be remembered in this connection that the purchasing power of the dollar is no longer what it was a few years ago: *Hutchison v. Pa. R. R. Co.*, 378 Pa. 24, 32, 105 A. 2d 356. It should also be noted that the *Karcesky* case which controlled the action of the court below was a 5 to 2 decision, strong dissenting opinions being filed by Mr. Justice, now Chief Justice, JONES, and by Mr. Justice MUSMANNO. It should be noted that the case of *Carpenelli v. Scranton Bus Co.*, 350 Pa. 184, 188, 38 A. 2d 44, also relied upon by the court below, was a 4 to 3 decision in which a strong dissenting opinion was written by Mr. Justice, later Chief Justice, DREW in which Chief Justice MAXEY and Mr. Justice HUGHES joined.

We are not convinced that this was a compromise verdict. The plaintiff was a guest and there was no real evidence to show any contributory negligence on his part. His case is also aided by the presumption of due care that the law raises in defense of one killed in an accident. Defendant James Junod, with Thomas

Murosky as a passenger, was operating his vehicle in an eastwardly direction on U. S. Route 5 at about 10:00 p.m. on a rainy night. Defendant Spaulding was operating his vehicle, with Marlene Graham as a passenger, in the opposite or westwardly direction on the same highway. When Junod was at a point approximately 280 feet east of the "T" intersection of Westwood Drive with Route 5, his vehicle came into contact with the Spaulding car, damaging it on the left front and left side. Junod's vehicle was damaged on the right side. Junod testified that as he approached the point of impact he was traveling about 35 miles an hour because, as he said, it was not safe to travel any faster because visibility was bad. As he approached the scene of the impact a vehicle came over the rise of the road ahead of him and its headlights created a glare which covered his entire windshield. Interpreting the movement of the oncoming car as angling toward his side of the highway, Junod applied his brakes. He testified that his car went into a spin and the accident occurred. Spaulding's story was that he was traveling westwardly at about 20 to 30 miles an hour. He intended leaving the highway at about the point of impact in order to attend an open air movie theatre which was located to the north of the pavement some distance to the west of the scene of the collision. He testified that he first saw the Junod car on his side of the highway when it was some distance to the west of him. It returned to its own or south side of the highway and then it pulled directly across the road in front of him. Somewhere in the course of its travel across the highway it began to slide sideways and the two cars met on Spaulding's side of the road. Marlene Graham, Spaulding's passenger, corroborated his statement that the Junod car was on their side of the road at the moment of impact. One of the questions in the

trial was whether there was a deposit of oil on Route 5 at and to the west of the point of impact. It was the theory of Junod that as he applied his brakes upon the sudden apprehension of danger created by the glare of lights on his windshield from a car which he thought was coming over to his side of the road, he went into a skid caused by the presence of oil on the road. This oil, it was claimed, had been tracked out onto the main highway by cars entering said highway from Westwood Drive, which had recently been oiled. The contact between the cars took place at a point 280 feet east of Westwood Drive and it is questionable whether the oil would be tracked that far from the intersection. The jury could have found that Spaulding may well have been on the wrong side of the road, thus causing Junod to "jam on his brakes." The jury might well have questioned the stories of Junod and Spaulding as to the speed at which they were traveling in view of the tremendous impact and the great amount of damage sustained by each vehicle as well as the injuries sustained by the passengers. The jury probably found that both drivers were operating their cars at speeds too great under all the circumstances. The jury could also have found that either or both of the drivers were on their wrong sides of the road at some time or times preceding the impact. The decedent should not be convicted of contributory negligence merely because he and Junod were having a conversation about baseball. While it is the law of this Commonwealth that a substantial verdict will be sustained if it is the result of a compromise on the questions of negligence of the drivers and contributory negligence of the plaintiff: *Karcesky v. Laria*, 382 Pa. 227, 114 A. 2d 150; *Elza v. Chovan*, 187 Pa. Superior Ct. 275, 144 A. 2d 436, we do not believe that this principle is controlling in the present case. The verdict, as we

have hereinbefore said, was not substantial and there could be little doubt as to the negligence of the defendants under the facts and circumstances of this case: *Krusinski v. Chioda,* 394 Pa. 90, 145 A. 2d 681. The fact that the jury deliberated for approximately 13 hours before returning its verdict might very well be attributed to the complexity presented by the number of actions tried together. This was indicated by the fact that when the jury returned to the courtroom, the trial judge found an inconsistency in one of the verdicts. Upon calling this matter to the attention of the jury, the foreman responded: "There are a few things we weren't too up on it, and some of the verdicts were put in that way figuring that they could be straightened out later when we got down here before you." The jury was then sent back and later returned with verdicts in each case which were consistent in all respects.

In the retrial of this case, a new jury will not be confronted with a multiplicity of suits and can give its full attention to the issues in the one case.

Order reversed and a new trial is granted.

WRIGHT, J., would affirm on the opinion of Judge LAUB for the court en banc.