Murosky *v.* Spaulding, Appellant.

Argued September 27, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

reargument refused January 3, 1961.

*John A. Blackmore,* with him *Blackmore & Greishober,* for appellants.

*John E. Britton,* with him *Gifford, Graham, MacDonald & Illig,* for appellant.

*Will J. Schaaf,* with him *John A. Spaeder,* and *Marsh, Spaeder, Baur, Spaeder & Schaaf,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, November 15, 1960:

These appeals present in slightly novel guise an old inquiry: do the circumstances warrant an appellate court in reversing the grant of a new trial in a trespass action by a lower court?

The factual background of this litigation was stated by Judge ERVIN speaking for the Superior Court in *Murosky v. Spaulding,* 188 Pa. Superior Ct. 306, 146 A. 2d 339: ". . . Junod, with . . . Murosky as a passenger, was operating his vehicle in an eastwardly direction on U. S. Route 5 at about 10:00 p.m. on a rainy night. . . . Spaulding was operating his vehicle, . . . in the opposite or westwardly direction on the same highway. When Junod was at a point approximately 280 feet east of the 'T' intersection of Westwood Drive with Route 5, his vehicle came into contact with the Spaulding car, damaging it on the left front and left side. Junod's vehicle was damaged on the right side. Junod testified that, as he approached the point of

impact, he was traveling about 35 miles an hour because, as he said, it was not safe to travel any faster because visibility was bad. As he approached the scene of the impact a vehicle came over the rise of the road ahead of him and its headlights created a glare which covered his entire windshield. Interpreting the movement of the oncoming car as angling toward his side of the highway, Junod applied his brakes. He testified that his car went into a spin and the accident occurred. Spaulding's story was that he was traveling westwardly at about 20 to 30 miles an hour. He intended leaving the highway at about the point of impact in order to attend an open air movie theatre which was located to the north of the pavement some distance to the west of the scene of the collision. He testified that he first saw the Junod car on his side of the highway when it was some distance to the west of him. It returned to its own or south side of the highway and then it pulled directly across the road in front of him. Somewhere in the course of its travel across the highway it began to slide sideways and the two cars met on Spaulding's side of the road. Marlene Graham, Spaulding's passenger, corroborated his statement that the Junod car was on their side of the road at the moment of impact. One of the questions in the trial was whether there was a deposit of oil on Route 5 at and to the west of the point of impact. It was the theory of Junod that as he applied his brakes upon the sudden apprehension of danger created by the glare of lights on his windshield from a car which he thought was coming over to his side of the road, he went into a skid caused by the presence of oil on the road. This oil, it was claimed, had been tracked out onto the main highway by cars entering said highway from Westwood Drive, which had recently been oiled. The contact between the cars took place at a point 280 feet east of Westwood Drive . . ."

On February 14, 1956 a trespass action was instituted in the Court of Common Pleas of Erie County by Murosky, Administrator of his deceased son's estate, against Spaulding and Junod. On April 14, 1957 verdicts were returned in favor of Murosky and against both Spaulding and Junod, said verdicts being $1,-332.93 in the death action and $3,000 in the survival action.[1] Murosky moved for a new trial upon the ground that the verdict of $3,000 in the survival action was inadequate.[2]

On March 7, 1958 a court en banc consisting of President Judge EVANS and Judges LAUB and ROSSITER refused Murosky's motion for a new trial. The court's opinion—written by Judge LAUB and joined in by President Judge EVANS and Judge ROSSITER—stated, inter alia: "From this brief recitation of the facts, it can be seen that liability in either or both defendants was not clear" and that "an even balance, if not a preponderance, of the evidence indicates lack of liability on the part of the defendants".

An appeal was then taken to the Superior Court where the *sole question* at issue was the adequacy of the $3,000 verdict in the survival action. In reversing the court below and awarding a new trial, the Superior Court said,[3] inter alia: ". . . there could be little doubt as to the negligence of the defendants under the facts and circumstances of this case: . . ." However, in its order of reversal, *the Superior Court granted a new trial generally and not a new trial limited to the issue of damages.*

---

[1] The trial judge at the first trial was Judge BURTON R. LAUB.

[2] The court below stated: "The verdict in the death case is not under scrutiny since the sum returned by the jury in that action was agreed upon during trial".

[3] Judge WRIGHT dissented.

On September 26, 1959, Murosky moved the Court of Common Pleas of Erie County to limit the new trial to the issue of damages in the survival action and Judge LAUB, in a written opinion, refused that motion upon the ground that, the Superior Court not having ordered a limitation of the issue in the new trial to damages only, the court below lacked power to make such restriction.

At the new trial—before President Judge ROBERTS, specially presiding, and a jury—the jury on October 25, 1959 found a verdict in favor of Spaulding and Junod. Motions for judgment n.o.v. and a new trial were filed by Murosky. After oral argument before a court en banc composed of President Judge ROBERTS, President Judge EVANS and Judges LAUB and ROSSITER, Murosky's motion for judgment n.o.v. was unanimously refused and his motion for a new trial was granted by a divided court. President Judge ROBERTS wrote the opinion—in which Judge ROSSITER joined—for the majority of the court, President Judge EVANS filed a concurring opinion and Judge LAUB filed a dissenting opinion. From the grant of a new trial these appeals lie.

An analysis of all three opinions reveals one area of general agreement, i.e., that the evidence at the first trial and the evidence at the second trial on the basic issues were *substantially* the same. The main area of disagreement in the court below lies in the effect, if any, upon the jury verdict at the second trial of either or both the jury verdict at the first trial and the opinion of the Superior Court after the first trial in *Murosky v. Spaulding,* supra. While the majority of the court below acknowledged it lacked authority to limit the issue at the second trial to damages alone, yet it considered as conclusive of Murosky's right to recover the jury verdict at the first trial and the

language of the Superior Court in *Murosky v. Spaulding,* supra. So reasoning, the lower court majority found the jury verdict at the second trial in conflict with the prior adjudication of the jury and the Superior Court and granted a new trial "in the interest of justice".[4] Judge EVANS, concurring, said "all we have are three different conclusions from which [he was] not willing to choose without good reason". Dissenting, Judge LAUB contended: (1) that the majority of the lower court, unsupported by any precedent, would allow the result of the first trial to control the result of the second trial, even though the Superior Court order required a trial de novo; (2) that the majority ignored the view that when a plaintiff appeals from a favorable award and obtains an *unrestricted* new trial he "takes his chances on retrial of securing either a larger verdict or none at all"; (3) that the majority view conflicts with *Carroll v. Pittsburgh,* 368 Pa. 436, 84 A. 2d 505. In *Carroll* we held that a new trial may not be granted "in the interest of justice"; there must be some objective specification of the ground upon which the grant of a new trial is predicated and a "mere conflict of testimony" or "the court's disagreement with a jury verdict" do not constitute grounds upon which to grant a new trial.

In passing upon the propriety of the grant of this new trial certain well-established principles of law must be kept in mind: (1) an award of a new trial cannot be based solely upon the ground that the "interest of justice" so requires: *City Products Corporation v. Bennett Brothers,* 390 Pa. 398, 401, 135 A. 2d 924; *Bellettiere v. Philadelphia,* 367 Pa. 638, 644, 81 A. 2d

---

[4] We fail to see the relevancy to the instant situation of *Hilling v. Stinson Motor Sales, Inc.,* 191 Pa. Superior Ct. 343, 156 A. 2d 887; and *Daccorso v. George F. Otto Corp.,* 397 Pa. 328, 155 A. 2d 199, relied upon by the majority in the court below.

857; *Werner v. Aunkst,* 178 Pa. Superior Ct. 404, 405, 115 A. 2d 416; (2) where "in the interest of justice" is the only reason assigned for the grant of a new trial, it is our obligation to examine the entire record to determine whether any *valid* reason exists for disturbing the jury's verdict: *Morse Boulger Destructor Company v. Arnoni,* 376 Pa. 57, 63, 64, 101 A. 2d 705; *Beal v. Reading Company,* 370 Pa. 45, 49, 87 A. 2d 214; (3) where the court below decides to grant a new trial for a particular reason which on appellate review is deemed without merit, a reversal may be directed: *St. Clair Cemetery Association v. Commonwealth,* 390 Pa. 405, 408, 136 A. 2d 85; *Glaister v. Eazor Express, Inc.,* 390 Pa. 485, 491, 136 A. 2d 97.

While the majority state that a new trial is required "in the interest of justice", an examination of its opinion clearly reveals that the *ground* upon which the new trial was allowed was because of the majority's belief that the jury verdict was at variance with both the first trial verdict and the Superior Court's opinion.

The fallacy of this reasoning of the majority of the court below is readily apparent. The statement in the Superior Court's opinion that "there could be little doubt as to the negligence of the defendants" must be read in its proper context. Under *Karcesky v. Laria,* 382 Pa. 227, 114 A. 2d 150, if a verdict is substantial and the result of a compromise on the questions of negligence and contributory negligence, then the verdict will not be set aside. The statement of the Superior Court was made in connection with the question whether on the record the verdict was the result of a compromise on the question of negligence; it was not intended to render the ultimate question of liability res adjudicata. That such be true is evident from the fact that the Superior Court ordered a new trial generally, i.e. on negligence, contributory negligence

and damages. To find otherwise would create this unreal and anomalous situation; that even though the Superior Court conclusively found Spaulding and Junod negligent, it directed by its order that the jury at the second trial pass on that issue. The very language of the Court acknowledges that there could be "doubt" however "little" of Spaulding's and Junod's liability; the resolution of such "doubt" was within the province of the jury at the second trial and not within the province of the court as the mandate of the Superior Court made clear.

The majority's conclusion would produce unprecedented results: (1) the Superior Court mandate of a new trial generally did not mean what it said and (2) *no verdict* finding either or both Spaulding and Junod free of negligence could ever be sustained. The Superior Court's decision commanded neither result and its order contemplated a trial de novo of *all* the issues of fact. Such a trial took place and the jury, acting within its appropriate province as the trier of the facts, found neither Spaulding nor Junod guilty of negligent conduct.

Our independent study of this record convinces us that the question of the negligence of Spaulding and Junod, or either of them, was clearly for the jury, that the jury's verdict was neither capricious nor arbitrary and that the court below, predicating its determination on an unsound ground, under the circumstances abused its discretion in granting a new trial.

Order reversed.

Mr. Justice MUSMANNO dissents.